767 So.2d 1179 (2000)
Paula Jean HEARNDON, Petitioner,
v.
Kenneth L. GRAHAM, Respondent.
No. SC92665.
Supreme Court of Florida.
September 14, 2000.
*1181 Horace N. Moore, Sr., Gainesville, Florida; and Norm La Coe, Brighton, Colorado, for Petitioner.
Michael W. Jones, Gainesville, Florida, for Respondent.
PER CURIAM.
We have for review a decision passing upon the following certified question of great public importance:
WHERE A PLAINTIFF IN A TORT ACTION BASED UPON CHILD ABUSE ALLEGES THAT SHE SUFFERED FROM TRAUMATIC AMNESIA CAUSED BY THE ABUSE, DOES FULTON COUNTY ADMIN. v. SULLIVAN, 22 FLA. L. WEEKLY S578 (FLA.1997), PRECLUDE JUDICIAL RECOGNITION OF AN EXCEPTION TO OR A TOLLING OF THE STATUTE OF LIMITATIONS BASED UPON THE DOCTRINE OF DELAYED DISCOVERY RECOGNIZED IN CHAPTER 92-102, LAWS OF FLORIDA?
Hearndon v. Graham, 710 So.2d 87, 92 (Fla. 1st DCA 1998). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The certified question concerns the effect of our decision in Fulton County Administrator v. Sullivan, No. 87,110 (Fla. opinion filed Sept. 25, 1997). However, subsequent to the district court's decision in Hearndon, this Court reconsidered its original decision in Sullivan and rendered a decision on rehearing determining that the limitations period of a foreign jurisdiction (rather than Florida's) applied. Thus, the discussion of Florida's statute of limitations in the earlier Sullivan opinion was no longer applicable. See Fulton County Adm'r v. Sullivan, 753 So.2d 549, 552 (Fla. 1999). The certified question is therefore rephrased as follows:
WHERE A PLAINTIFF IN A TORT ACTION BASED ON CHILDHOOD SEXUAL ABUSE ALLEGES THAT SHE SUFFERED FROM TRAUMATIC AMNESIA CAUSED BY THE ABUSE, DOES THE DELAYED DISCOVERY DOCTRINE POSTPONE ACCRUAL OF THE CAUSE OF ACTION?
We answer the rephrased question in the affirmative and reverse the district court's decision.
The facts established by the district court and its ruling below are as follows:
Paula Jean Hearndon [filed a complaint in 1991] against Kenneth Graham, Hearndon's stepfather, for injuries that resulted from sexual abuses he allegedly committed upon her beginning in 1968 when she was 8, and continuing until 1975 when she turned 15 (at which time, according to the complaint, Graham allegedly murdered Hearndon's mother). The complaint was dismissed with prejudice on the sole ground that the alleged cause of action was barred, as a matter of law, by the four-year statute of limitations in section 95.11(3)(o), Florida Statutes (1987). Hearndon argued to the trial court that it should apply the doctrine of delayed discovery of an injury to toll the statute of limitations in her case on the basis that, as an adult survivor of childhood sexual abuse, she suffered from so-called "traumatic amnesia," or a related syndrome [until approximately 1988], caused by the abuses allegedly perpetrated by Graham, thereby explaining why earlier commencement of the action had not been possible. The trial court dismissed Hearndon's complaint citing the Third District Court of Appeal's decision in Lindabury v. Lindabury, 552 So.2d 1117 (Fla. 3d DCA 1989).
Hearndon, 710 So.2d at 87-88. The First District held that the statute of limitations was not tolled based on the delayed discovery doctrine in light of the fact that the Legislature provided explicit tolling provisions *1182 that did not include delayed discovery due to lack of memory. See id. at 90. We conclude that the doctrine should apply to causes of action alleging subsequent recollection of childhood sexual abuse.

POSTURE
This case is before the Court based on the district court's affirmance of the trial court order granting respondent's motion to dismiss the complaint. In reviewing the rephrased certified question, we do so from the perspective of viewing petitioner's complaint in a light most favorable to her case, and will consider all facts and reasonable inferences to her advantage. See Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999), review dismissed, No. SC00-944, ___ So.2d ___ (Fla. May 3, 2000). For the sake of our review, petitioner suffered childhood sexual abuse that caused her to suppress or lose memory of the events for several years; she later recalled the abuse and filed suit. We do not pass on the merits of whether she actually lost and then retrieved her memory of these alleged events, and we do not pass on the reliability of any psychological techniques that may have been employed in arousing her memory.
The district court recognized that there is credible medical support for the proposition that many victims of childhood sexual abuse develop amnesia because of the horrible nature of the abuse so that they completely lose or suppress the memory for years, only to later recall the events as adults. See Jocelyn B. Lamm, Easing Access to the Courts for Incest Victims: Toward an Equitable Application of the Delayed Discovery Rule, 100 Yale L.J. 2189, 2194 (1991). The district court cited to the dissenting opinion in Lindabury v. Lindabury, which stated that:
In my view psychiatry "represents the penultimate grey area," Nesbitt v. Community Health of South Dade, 467 So.2d 711, 717 (Fla. 3d DCA 1985) (Jorgenson, J., concurring in part, dissenting in part), particularly with regard to issues of foreseeability and predictability of future dangerousness. However, it does not necessarily follow that this area of medicine cannot serve the courts and litigants by providing useful testimony with respect to past events. Expert testimony regarding past acts and their consequences can readily be evaluated by a fact finder and considered with other evidence in the case to determine whether the alleged repression in fact occurred and, accordingly, whether the plaintiff ever had an opportunity to bring an earlier action. Repression, moreover, can hardly be deemed a novel concept; it appears in the literature as early as the late 19th century and is integral to any number of psychoanalytic theories.
552 So.2d at 1118 (Jorgenson, J., dissenting). Nevertheless, we recognize that the acceptance of theories supporting memory loss of childhood sexual abuse is a disputed area of psychological study. It is debated whether such memory loss actually occurs or whether plaintiffs are coached into believing that such abuse occurred by suggestions posed by psychologists. For example, one law journal article advocated the application of the delayed discovery doctrine in the case of childhood sexual abuse based on view that:
The classic psychological responses to incest trauma are numbing, denial, and amnesia. During the assaults the incest victim typically learns to shut off pain by "diss[as]ociating," achieving "altered states of consciousness ... as if looking on from a distance at the child suffering the abuse." To the extent that this defense mechanism is insufficient, the victim may partially or fully repress her memory of the assaults and the suffering associated with them: "Many, if not most, survivors of child sexual abuse develop amnesia that is so complete that they simply do not remember that they were abused at all; or ... they minimize or deny the effects of the abuse so completely that they cannot associate it *1183 with any later consequences." Many victims of incest abuse exhibit signs of Post-Traumatic Stress Disorder ("PTSD"), a condition characterized by avoidance and denial that is associated with survivors of acute traumatic events such as prisoners of war and concentration camp victims. Like others suffering from PTSD, incest victims frequently experience flashbacks and nightmares well into their adulthood.
Lamm, supra at 2194 (footnotes omitted). On the other hand, another author has stated that
Without some objective corroboration courts probably ought not to allow delayed recall incest litigation, [Note 158] and thus avoid the ... task of attempting to sort out `retrieved' recollections of actual events from similarly retrieved fantasies.
. . . .
[Note 158]: A number of courts have taken this position. See, e.g., ... Peterson[Petersen] v. Bruen, [106 Nev. 271,] 792 P.2d 18, 25 (Nev.1990) ("We recognize that injustice may result from our ruling in instances where (childhood sexual abuse) has occurred but cannot be demonstrated by corroborative evidence that is clear and convincing. We are persuaded, however, that the potential for fraudulent claims is sufficiently great to warrant such a ruling."); State v. Hungerford, No. 94-S-045, 1995 WL 378571 (N.H.Super.Ct., May 23, 1995) (holding that the repressed memory of assaults shall not be admitted at trial because the process of therapy used in these cases to recover the memories is not scientifically reliable); S.V. v. R.V., 933 S.W.2d 1 (Tex.1996) (holding that expert opinions regarding recovered memories of childhood sexual abuse could not meet objective verifiability element for extending discovery rule in childhood sexual abuse case)....
Edward Greer, Tales of Sexual Panic In the Litigation Academy: The Assault on Reverse Incest Suite, 48 Case W. Res. L.Rev. 513, 553-54 & n.158 (1998) (footnote 157 omitted). Organizations have been founded to counter what is believed by some to be the inappropriate use of psychology to invent "repressed" memories of abuse:
Repressed memory became headline news in November 1993 when Steven Cook accused Cardinal Joseph Bernardin of sexually abusing him on the basis of a hypnotically recovered memory that Cook subsequently recanted (Woodward 1994). More than 300 "retractors"individuals who, like Cook, first came upon their memories of abuse in therapy and later realized them to be falsehave disavowed their initial accusations and denounced recovered memory therapy (Macnamara 1995, 41). As of October 1994 more than 17,000 families had contacted the False Memory Syndrome Foundation (FMSF) reporting false accusations of childhood sexual abuse (Lindsay and Read 1995, 850). To its supporters, the FMSF seeks to promote education and public awareness of the damage that recovered memory therapy causes its patients and their families; to its critics, however, the FMSF represents a backlash against the efforts of feminists and others to expose and overcome the reality of child sexual abuse in America. Because the ideological stakes are so high and the sides of this debate have so little common ground, repressed memory has become an extremely divisive issue.
Richard A. Leo, The Social and Legal Construction of Repressed Memory, 22 Law & Soc. Inquiry 653, 654 (1997) (footnotes omitted). Thus, this Court must acknowledge that even though many jurisdictions (as cited below) support the application of the delayed discovery doctrine based on memory loss of childhood sexual abuse, there is considerable disagreement relative to the nature of these discovered memories.

*1184 THE DELAYED DISCOVERY DOCTRINE
The "delayed discovery" doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action. See Hillsborough Community Mental Health Ctr. v. Harr, 618 So.2d 187, 189 (Fla.1993); 35 Fla. Jur.2d Limitations and Laches § 60 (1996). The United States Supreme Court applied the "blameless ignorance" doctrine in Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), thereby delaying the accrual of a cause of action until the plaintiff reasonably discovered the right of action, reasoning that "the traditional purposes of statutes of limitations ... require the assertion of claims within a specified period of time after notice of the invasion of legal rights." Id. This Court adopted the doctrine into Florida law as the "delayed discovery" doctrine. City of Miami v. Brooks, 70 So.2d 306, 309 (Fla.1954). See Kush v. Lloyd, 616 So.2d 415, 418 (Fla.1992); Creviston v. General Motors Corp., 225 So.2d 331, 334 (Fla.1969) (explaining that the "accrual of the [underlying cause of action] must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights"). Thus, application of the delayed discovery doctrine to the accrual of a cause of action and, therefore, to the running of a statute of limitation is not new to Florida law.

CONFUSION SURROUNDING ACCRUAL AND TOLLING AS THEY RELATE TO THE DELAYED DISCOVERY DOCTRINE
The district court correctly identified a certain amount of confusion regarding this Court's application of the delayed discovery doctrine-sometimes the Court stated that the doctrine delayed the "accrual" of the cause of action and other times we stated that the doctrine affected the "tolling" of the statute of limitations. See Hearndon, 710 So.2d at 90-91. Compare Nardone v. Reynolds, 333 So.2d 25, 39 (Fla.1976)(holding that "the statute of limitations will be tolled when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury"), modified on other grounds, Tanner v. Hartog, 618 So.2d 177 (Fla.1993); and Seaboard Air Line R.R. v. Ford, 92 So.2d 160, 165 (Fla.1955) (explaining that delayed discovery tolls running of statute of limitation); with Miami Beach First Nat'l Bank v. Edgerly, 121 So.2d 417, 418 (Fla.1960) (holding that cause of action by depositor against bank for bank's wrongful payment on forged check endorsement accrued when the depositor learned of the forgery); and City of Miami v. Brooks, 70 So.2d 306, 309 (Fla.1954) (holding that "the statute must be held to attach when the plaintiff was first put upon notice or had reason to believe that her right of action had accrued").[1] As we explain below, however, the delayed discovery doctrine may only be applied to the accrual of a cause of action.
The determination of whether a cause of action is time-barred may involve the separate and distinct issues of when the action accrued and whether the limitation period was tolled. A statute of limitations "runs from the time the cause of action accrues" which, in turn, is generally determined by the date "when the last *1185 element constituting the cause of action occurs." § 95.031, Fla. Stat. (1987). See State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818, 821 (Fla.1996)("[A] cause of action cannot be said to have accrued, within the meaning of the statute of limitations, until an action may be brought."). The "tolling" of a limitation period would interrupt the running thereof subsequent to accrual. See § 95.051, Fla. Stat. (1987). To that end, the Legislature enumerated specific grounds for tolling limitation periods, but did not include delayed discovery due to lack of memory. See § 95.051(1), Fla. Stat. (1987). Furthermore, the tolling statute specifically precludes application of any tolling provision not specifically provided therein. See § 95.051(2), Fla. Stat. (1987). We extrapolate, therefore, that while accrual pertains to the existence of a cause of action which then triggers the running of a statute of limitations, tolling focuses directly on limitation periods and interrupting the running thereof. That both accrual and tolling may be employed to postpone the running of a statute of limitations so that an action would not become time-barred should not cause confusion between these distinct concepts.[2] Thus, a determination of whether a cause of action is time-barred pursuant to the expiration of a statute of limitations may require two different analyses: First, whether the cause of action accrued and, if so, when; and, second, whether a statutory tolling provision applies.
In light of the above distinction, we recognize that the Legislature limited the justification for tolling limitation periods to the exclusion of delayed discovery due to loss of memory, but did not likewise limit the circumstances under which accrual may have been delayed.[3] We therefore recede from our past decisions that applied the delayed discovery doctrine to toll the running of a statute of limitation. The Florida Statutes do not impede, however, the delay of the accrual of the cause of action.[4]

APPLICATION
Numerous courts around the country apply the delayed discovery doctrine to *1186 cases alleging childhood sexual abuse followed by a temporary loss of memory. See, e.g., Johnson v. Johnson, 701 F.Supp. 1363, 1370 (N.D.Ill.1988); Doe v. Roe, 191 Ariz. 313, 955 P.2d 951, 960 (1998); Evans v. Eckelman, 216 Cal.App.3d 1609, 265 Cal. Rptr. 605, 610 (1990); Phinney v. Morgan, 39 Mass.App.Ct. 202, 654 N.E.2d 77, 79-80 (1995); Jones v. Jones, 242 N.J.Super. 195, 576 A.2d 316, 321 (App.Div.1990); Ault v. Jasko, 70 Ohio St.3d 114, 637 N.E.2d 870 (1994). Application of the doctrine to such cases constitutes both the majority rule and the modern trend in American jurisprudence. See Doe, 955 P.2d at 960; Ault, 637 N.E.2d at 872.
Reasons in favor of application of the doctrine in the case of childhood sexual abuse are as follows. First, it is widely recognized that the shock and confusion resultant from childhood molestation, often coupled with authoritative adult demands and threats for secrecy, may lead a child to deny or suppress such abuse from his or her consciousness. See Ault, 637 N.E.2d at 872 (citing Evans, 265 Cal.Rptr. at 606, 608). Second, the doctrine is well established when applied, for example, in cases involving breach of implied warranty[5] or medical malpractice;[6] it would seem patently unfair to deny its use to victims of a uniquely sinister form of abuse. Accordingly, application of the delayed discovery doctrine to childhood sexual abuse claims is fair given the nature of the alleged tortious conduct and its effect on victims, and is consistent with our application of the doctrine to tort cases generally; thus, we hold that the doctrine is applicable to childhood sexual abuse cases.

SECTION 95.11(7), FLORIDA STATUTES
The 1992 enactment of the delayed discovery doctrine to be employed in cases of childhood sexual abuse does not apply in the instant case. Section 95.11, Florida Statutes (1999), provides that:
For intentional torts based on abuse.An action founded on alleged abuse, as defined in s. 39.01, s. 415.102, or s. 984.03, or incest, as defined in s. 826.04, may be commenced at any time within 7 years after the age of majority, or within 4 years after the injured person leaves the dependency of the abuser, or within 4 years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the abuse, whichever occurs later.
§ 95.11(7), Fla. Stat. (1999). Subsection (7) became effective on April 8, 1992, pursuant to the Legislature's enactment of chapter 92-102, section 1 of the Laws of Florida. Petitioner's action precedes the effectiveness of the above statute since the abuse alleged in this case occurred from 1968 to 1975 and the abuse was not recalled until approximately 1988, and since petitioner filed her complaint in 1991.

CONCLUSION
We therefore hold that the delayed discovery doctrine applies to the accrual of the instant cause of action based on a claim of childhood sexual abuse accompanied by traumatic amnesia-keeping in mind that by our decision petitioner survives respondent's motion to dismiss. However, our decision does not pass on the factual development of the issue that will be addressed at trial. We hereby answer the rephrased certified question in the affirmative, quash the district court's decision below, and remand the case for proceedings consistent with this opinion.[7]
It is so ordered.
*1187 SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., dissents with an opinion, in which HARDING, J., concurs.
WELLS, C.J., dissenting.
The alleged sexual abuse in this case began in 1968 and continued until 1975. The complaint alleged that complainant did not become aware of the abuse until 1990.
Though the majority's analysis is extensive, the analysis fails to deal with the very similar case of Wiley v. Roof, 641 So.2d 66 (Fla.1994). The district court opinion does acknowledge Wiley and attempts to distinguish it. I cannot agree that Wiley is distinguishable.
I conclude that the Legislature recognized that Florida law barred this type of cause of action, as stated by the majority in the Third District's case of Lindabury v. Lindabury, 552 So.2d 1117 (Fla. 3d DCA 1989), and for that reason adopted the amendment to the statute of limitations of section 95.11(7), Florida Statutes, in 1992. However, this Court held in Wiley that this 1992 amendment did not revive barred causes of action. Therefore, the trial court's decision that the statute of limitations barred this cause of action was correct and should be approved.
HARDING, J., concurs.
NOTES
[1] The interchangeable use of accrual and tolling seems to be due to loose usage rather than a determination that the two principles have the same meaning given that there is no case that makes such a determination and given that their distinct usage by the Legislature contradicts an identical meaning. As stated by the California Supreme Court when it recognized that California courts were similarly stating accrual and tolling interchangeably: Clarity of thought will be promoted by the proper use of the words since they represent different principles. See Cuadra v. Millan, 17 Cal.4th 855, 72 Cal.Rptr.2d 687, 952 P.2d 704, 710 (1998).
[2] The distinction in Florida law between accrual of a cause of action and the tolling of a statute of limitation is mirrored in federal law. Under federal law, a claim generally accrues "when all of the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action," Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed.Cir.1988), whereas "[t]olling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended." Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir.1978).
[3] A report produced by the Legislature recognizes the discovery rule as applied to accrual of cause of actions:

VI. When does a cause of action accrue?
A. General rule.
(1) The statute of limitations does not begin to run, of course, until the cause of action sued upon accrues. For the vast majority of the cases, the action accrues when [an] event giving rise to damage occurs. Examples are: when the trespass occurs on land, when a contract is breached or repudiated, or when the collision occurs in an auto accident.
B. Special Problems.
(1) Special problems arise in certain tort and fraud cases where the plaintiff cannot readily discover the injury done to him. In these cases the action is delayed through no fault of the plaintiff and should be given special consideration.
Thomas E. Bevis, Florida Law Revision Council, Project on Statutes of Limitation: Some Policy Considerations (Apr. 8, 1972)(unpublished report held by Florida State Archives).
[4] But see Lindabury v. Lindabury, 552 So.2d 1117 (Fla. 3d DCA 1989). In Lindabury, the plaintiff filed a complaint in 1985 alleging childhood sexual batteries that purportedly occurred from 1955 through 1965. The plaintiff claimed that her memories of the batteries were repressed and then "rediscovered" just prior to filing her complaint. The third district held that the action was time-barred by the statute of limitations, explaining that "[i]t is beyond contradiction that the alleged incestuous acts, if taken as true, damaged the appellant at the time they occurred" and that the last alleged battery in 1965 marked the accrual of her cause of action. See id. at 1117.
[5] Creviston, 225 So.2d at 331 (injury due to broken refrigerator door).
[6] City of Miami, 70 So.2d at 307 (injury due to x-ray treatment).
[7] Petitioner raises a second issue in which she asserts that this Court should recognize the common law tort of corruption of a child. We decline to address this issue because it was not addressed by the district court below and because it is outside the scope of the certified question.