11 So.3d 393 (2009)
Robert RODRIGUEZ, Appellant,
v.
Archbishop John C. FAVALORA, etc., Appellee.
No. 3D07-1931.
District Court of Appeal of Florida, Third District.
April 8, 2009.
Rehearing and Rehearing En Banc Denied July 2, 2009.
Ronald P. Weil, Miami, and Manuel A. Rodriguez, Coral Gables, for appellant.
Gaebe, Mullen, Antonelli, Esco & DiMatteo and Miriam R. Merlo, and Anne C. Sullivan, Coral Gables, for appellee.
Before GERSTEN, C.J., and SHEPHERD and LAGOA JJ.
PER CURIAM.
Affirmed. See Davis v. Monahan, 832 So.2d 708 (Fla.2002).
SHEPHERD and LAGOA, JJ., concur.
GERSTEN, C.J. (dissenting).
I respectfully dissent. Although this case may not merit a footnote in the history of United States/Cuba relations, it will be an indelible part of Roberto Rodriguez' psyche. Therefore, because I believe that equitable legal grounds and sound public policy call for delayed accrual of the statute of limitations in this childhood sexual abuse case, I would reverse.
Roberto Rodriguez ("Rodriguez") was a "Pedro Pan" child.[1] "Operation Pedro Pan" was a semi-clandestine operation, which in late 1960 attempted to remove children from Cuba after Fidel Castro came into power. Over 14,000 unaccompanied Cuban children came to the United States between 1960 and 1962. Approximately half of these children had no relatives or friends to receive them in the United States. Thus, upon their arrival, they were cared for by the charitable arm of the Archdiocese of Miami, the Catholic Welfare Bureau ("CWB"). CWB's director, Father Bryan O. Walsh, set up facilities in Miami to house the children until they could be reunited with their parents. See generally Yvonne M. Conde, Operation Pedro Pan: The Untold Exodus of 14,000 Cuban Children (1999).
Rodriguez sued Archbishop John C. Favalora, as Archbishop of the Archdiocese of Miami ("the Archdiocese"), for damages resulting from sexual abuse which allegedly occurred while Rodriguez was under CWB care. The trial court dismissed the complaint as barred by the statute of limitations. Rodriguez appeals.
The Archdiocese contends that the suit is barred by the negligence statute of limitations. Rodriguez asserts that the doctrine of delayed discovery should be applied to delay the running of the statute. I agree with Rodriguez.
The dismissal of a complaint is reviewed de novo. The appellate court confines its review to the four corners of the complaint, *394 accepting the allegations of the complaint as true, and construing them in the light most favorable to the plaintiff. See, e.g., Brooke v. Shumaker, Loop & Kendrick, LLP, 828 So.2d 1078 (Fla. 2d DCA 2002).
Rodriguez' complaint states that he arrived in Miami in December of 1961, when he was eleven years old. Rodriguez was transported to a CWB camp in Florida City where he stayed until the spring of 1962. At this camp, Rodriguez was sexually abused. CWB later assigned Rodriguez to a foster home where he remained for approximately two years. From there, CWB provisionally returned Rodriguez to a CWB camp in Opa-Locka in 1964.
Rodriguez spent his final years of CWB care in a Texas reformatory for delinquent children. Rodriguez believes he was sent to the Texas reformatory in an effort to silence his complaints about the abuse. Rodriguez also alleges that while at the reformatory, he was given a regimen of unknown drugs. In 1966, at the age of 16, Rodriguez was finally reunited with his parents.
Rodriguez claims that between 1961 and 1966 the Archdiocese and its agents were the functional equivalent of his parents. As such, the Archdiocese owed him an affirmative duty of care. This duty included providing for his emotional, physical, and psychological well being and development. This duty also entailed furnishing him with a safe and secure environment with appropriate supervision, counsel, and instruction.
Rodriguez alleges that the Archdiocese breached its duty because, while under the Archdiocese's care, he was physically and emotionally threatened, sexually victimized, and generally traumatized. As a result of the Archdiocese's breach of duty, Rodriguez claims he suffered damages.
Significantly, Rodriguez alleges in his complaint that he is unable to recall the precise acts of abuse committed against him. He attributes this memory loss to his age at the time, the drugs he was given, and the trauma he suffered. Specifically, he alleges that "memory of his assaults, abuse and victimization [were] systematically extinguished," and that he "never recalled, or spoke of any of the acts of abuse he suffered."
Rodriguez' claim is based on negligence. Thus, on the motion to dismiss, the trial court had to determine when Rodriguez' claim of negligence accrued, and whether Rodriguez filed the action within the time prescribed by the statute of limitations. This decision involves analyzing the applicable statute of limitations, and exceptions to the statute's exclusionary effect.
A cause of action accrues when all the elements necessary to the cause of action are present. § 95.031(1), Fla. Stat. (2005). The statute of limitations for negligence provides that the action must be commenced within four years from the date of accrual. §§ 95.11(3), 95.031, Fla. Stat. (2005).
A negligence cause of action consists of three elements: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a failure on the part of the defendant to perform that duty; and (3) injury or damage to the plaintiff proximately caused by such failure. Stahl v. Metro. Dade County, 438 So.2d 14, 17 (Fla. 3d DCA 1983). For personal injury based on the negligent act of another, generally the date when the injury occurs is the event which triggers accrual. Cristiani v. City of Sarasota, 65 So.2d 878, 879 (Fla.1953).
Under the negligence statute of limitations, therefore, Rodriguez' claim should have been filed four years from the date of his injury. Assuming arguendo the date of Rodriguez' last injury coincided with the *395 date Rodriguez was released to his parents in 1966, Rodriguez' negligence claim should have been filed by 1970.
The statute of limitations' exclusionary effect, however, may be circumvented in certain circumstances. One of these circumstances is referred to as the delayed discovery doctrine. Hearndon v. Graham, 767 So.2d 1179 (Fla.2000). This doctrine "generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortuous act giving rise to the cause of action." 767 So.2d at 1184.
Hearndon involved a suit against a stepfather for damages resulting from childhood sexual abuse. The abuse allegedly began when the victim was about 8 years old, and continued until 1975, when she turned 15. However, the victim did not file her lawsuit until 1991, when she allegedly recovered her memory about the abuse.
The Hearndon Court conceded that delayed discovery is not one of the statutorily authorized grounds for tolling a limitation period. 767 So.2d at 1185; see also § 95.051, Fla. Stat. (2006). Nonetheless, the Court recognized a difference between circumstances delaying an action's accrual and tolling a statute of limitations. Regarding the statutory prohibition of tolling on other grounds, the Court wrote:
[T]he Legislature limited the justification for tolling limitation periods to the exclusion of delayed discovery due to loss of memory, but did not likewise limit the circumstances under which accrual may have been delayed. . . . The Florida Statutes do not impede, however, the delay of the accrual of a cause of action.
767 So.2d at 1185 (footnotes omitted).
The Court went on to state that the majority rule and the modern trend favors allowing delayed discovery in cases alleging childhood sexual abuse. The Court took into account the doctrine's use in other areas of tort law, such as medical malpractice. It also accepted "that the shock and confusion resultant from childhood molestation, often coupled with authoritative adult demands and threats of secrecy, may lead a child to deny or suppress such abuse from his or her consciousness." 767 So.2d at 1186.
Finally, the Hearndon Court concluded that, given the "uniquely sinister" nature of child abuse, it would be unfair to deny child abuse victims the use of the doctrine. 767 So.2d at 1186. The Court, therefore, decided that Hearndon's lawsuit should be allowed to proceed.
In 1992, the Legislature codified the delayed discovery doctrine in connection with intentional torts based on abuse. § 95.11(7), Fla. Stat. (1992). Subsection 7 states:
An action founded on alleged abuse . . . may be commenced at any time within 7 years after the age of majority, or within 4 years after the injured person leaves the dependency of the abuser, or within 4 years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the abuse, whichever occurs later.[2]
The amendment was not applicable in Hearndon. This case, however, requires that we decide whether the provision's enactment mandates a different result from Hearndon.
Here, the trial court determined that section 95.11(7) bars Rodriguez' claim. As the trial court acknowledges, section 95.11(7) "enlarge[ed] the limitations period *396 for claims of childhood sexual abuse," and "permits an adult who was a victim of childhood abuse to file a complaint at any point in his or her lifetime, as long as it is within four years of the date the victim discovers or realizes the harm caused by the abuse." However, because the statute limits the delayed discovery doctrine to intentional torts, the trial court refused to extend it to Rodriguez' negligence claim.
The majority's per curiam affirmance, albeit in a more summary fashion, agrees with the trial court's reasoning, based on Davis v. Monahan, 832 So.2d 708 (Fla. 2002). Respectfully, I do not believe Davis is controlling here.
Davis involved claims for breach of fiduciary duty, civil theft, conspiracy, conversion, and unjust enrichment arising from family members' misappropriation of the financial assets of an elderly relative. The plaintiff argued for application of the delayed discovery doctrine to bring her suit within the statute of limitations. The Court explained its reasons for rejecting the doctrine:
While we applied the delayed discovery doctrine to causes of action arising out of childhood sexual abuse and repressed memory in Hearndon, we did so only after considering the unique and sinister nature of childhood sexual abuse, as well as the fact that the doctrine is applicable to similar cases where the tortious acts cause the delay in discovery. We also considered the Legislature's endorsement in amending section 95.11(7), Florida Statutes (1999), to include intentional torts based on abuse and the fact that the application of the doctrine among the states is both the majority rule and modern trend. In this case, there is no modern trend or statutory endorsement. . . .
832 So.2d at 712.
Neither the Court's holding in Davis nor the limited scope of the codified version of the doctrine mandate dismissal of Rodriguez' claim, particularly at this stage of litigation. At the pleading stage, the sole consideration is whether the plaintiff can state a cause of action. Speculation about the sufficiency of plaintiff's evidence to prove the claim is irrelevant and immaterial. See, e.g., Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 205 (Fla. 3d DCA 2003).
Davis is easily distinguishable. Davis did not involve a childhood sexual abuse case. Therefore, it did not present the special circumstances discussed in Hearndon. In Davis, the Florida Supreme Court simply restricted application of the delayed discovery doctrine, when not controlled by section 95.11(7), to childhood sexual abuse situations. Rodriguez' claim falls squarely within this restriction. It is a childhood sexual abuse situation and is not controlled by section 95.11(7) because it is not an intentional tort.
Further, the limited scope of section 95.11(7) does not mandate dismissing Rodriguez' claim. A well-settled principle of statutory construction is that "in those instances `where the language of a statute clearly limits the application to a particular class of cases, leaving no room for doubts as to the meaning of the legislature, the statute may not be enlarged or expanded to cover cases not falling within its provisions.'" Barruzza v. Suddath Van Lines, Inc., 474 So.2d 861, 864 (Fla. 1st DCA 1985) (quoting 49 Fla. Jur.2d, Statutes § 118 (1984)).
Section 95.11(7) clearly limits its application to intentional torts. Therefore, it may not be expanded to include other types of cases. Thus, the enactment of section 95.11(7) does not change Hearndon's conclusion that Florida Statutes do not impede the delayed accrual of a cause of *397 action in negligence childhood abuse cases where the plaintiff does not discover the abuse within the statutory time period.
In this case, other equitable doctrines may be applied to circumvent the preclusive effect of a statute of limitations. For example, equitable tolling "is used in the interests of justice to accommodate both a defendant's right not to be called upon to defend a stale claim and a plaintiff's right to assert a meritorious claim when equitable circumstances have prevented a timely filing." Machules v. Dep't of Admin., 523 So.2d 1132, 1134 (Fla.1988).
Further, equitable estoppel may also be applied "on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position." Fla. Dep't of Health & Rehab. Servs. v. S.A.P., 835 So.2d 1091, 1096 (Fla.2002) (citing Major League Baseball v. Morsani, 790 So.2d 1071, 1076 (Fla.2001)). Equitable estoppel operates to prevent the wrongdoer from profiting from his or her own misconduct when the misconduct results in the victim's inability to timely raise his or her claim. Major League Baseball, 790 So.2d at 1077.
As the Florida Supreme Court stated:
the fundamental purposes served by the statute of limitations and the doctrine of equitable estoppel are congruent. . . . [A] main purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims. A prime purpose of the doctrine of equitable estoppel, on the other hand, is to prevent a party from profiting from his or her wrongdoing. Logic dictates that a defendant cannot be taken by surprise by the late filing of a suit when the defendant's own actions are responsible for the tardiness of the filing. The two concepts, i.e., the statute of limitations and equitable estoppel, thus work hand in hand to achieve a common goal, the prevention of injustice.
Major League Baseball, 790 So.2d at 1078 (footnote omitted).
Here, the interests of justice and principles of fair play call for allowing Rodriguez' claim to proceed beyond a motion to dismiss. Rodriguez attributes his inability to timely file his claim to the general trauma associated with childhood sexual abuse and CWB's misconduct in giving him unknown drugs which affected his memory.
Finally, the public policy weighs heavily in favor of allowing Rodriguez' claim to proceed. The statute of limitations' interest of protecting defendants from enforcement of stale claims must give way to the more compelling state interest of protecting children from harm. See Jones v. State, 640 So.2d 1084, 1085 (Fla.1994) ("As evidenced by the number and breadth of the statutes concerning minors and sexual exploitation, the Florida Legislature has established an unquestionably strong policy interest in protecting minors from harmful sexual conduct." (footnote omitted)).
Accordingly, because in my view the trial court and the majority erred both as a matter of law and as a matter of public policy in dismissing Rodriguez' negligence claim, I respectfully dissent.
NOTES
[1] Pedro Pan is Spanish for Peter Pan.
[2] This provision remains unchanged to date. § 95.11(7), Fla. Stat. (2008).