DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ACCESS INSURANCE PLANNERS, INC.,** a Florida corporation,
and **ACCESS INSURANCE UNDERWRITER, LLC,** a Florida
Limited Liability Company,
Appellants,

v.

**JANICE S. GEE, JAN GEE INSURANCE, LLC, JEFF ALTIZER** d/b/a
**BROOKSTONE INSURANCE** and **WENDY STARKS,**
Appellees.

Nos. 4D14-1883
and 4D14-2706

[September 30, 2015]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. 11-000705 CACE (12).

Douglas M. McIntosh and Kimberly Kanoff Berman of McIntosh, Sawran & Cartaya, P.A., Fort Lauderdale, for appellants.

Daniel E. Oates of Law Offices of Oates & Oates, P.A., Pompano Beach, for appellees.

GROSS, J.

The main question here is the application of the statute of limitations to a contract where one party agreed to pay commissions each time it received a commission from an insurance company. We conclude that the contract was divisible, so that the statute of limitations for each commission began to run when a commission was received by the appellants, the defendants below.

We therefore reverse in part and remand for the circuit court to enter an amended final judgment awarding damages only for the premiums received by the defendants after January 11, 2007.

## *The Pleadings*

On January 11, 2011, Janice Gee filed suit against Access Insurance Planners, Inc. and Access Insurance Underwriter, LLC (collectively "Access") alleging two counts of breach of contract, one claim against each Access company. Among other things, Gee sought damages for past due and unpaid commissions.

Access raised several affirmative defenses, including the statute of limitations. In addition, Access raised four counterclaims: (I) Fraud/Misrepresentation, (II) Unjust Enrichment, (III) Trade Secret Violation, and (IV) Injunctive Relief.[1]

Gee filed a reply to Access's affirmative defenses, asserting that the claims were not time barred because the causes of action did not begin to accrue until Access stopped making payments to her. Additionally, Gee filed an answer to the counterclaims, which raised several affirmative defenses.

## *The Evidence at Trial*[2]

At the bench trial, Gee established the existence of an employment agreement and Access's breach of that agreement by failing to pay her commissions.

In July 2004, Gee met with Phillip Wardell, who ran Access. The parties entered into an employment agreement where Gee would "self-generate" insurance business for Access and Access would pay a commission on this business.

Wardell provided Gee a written "Job Description" which gave sample commissions and approximations on percentages and splits based on different scenarios. Wardell agreed to pay Gee a commission equal to 50% of the "gross commission"–the amount paid by an insurer to Access–on group life and health policies and 25% on property and casualty policies. When an agent such as Gee sold a policy, the insurer would pay the initial commission to Access. A renewal commission also was paid to Access if

---

[1]Two former employees were also sued as defendants in Counts III and IV.
[2]This evidence is stated in the light most favorable to Gee, the prevailing party. *See Blue Paper, Inc. v. Provost*, 914 So. 2d 1048, 1049 (Fla. 4th DCA 2005) (citing *Darrow v. Moschella*, 805 So. 2d 1068, 1069 (Fla. 4th DCA 2002)).

the policy was renewed. After receiving such initial and renewal commissions, Access was to pay Gee her share.

Gee began work with Access on July 1, 2004. She first became suspicious in September 2007 when she discovered that she had not been paid all of her 2005 commissions.

Beginning in October 2009, through a series of e-mails, Gee and Wardell communicated about the payment discrepancies. They were unable to come to a final resolution. Wardell procrastinated and put Gee off by conceding that there were some errors and by pleading a temporary financial inability to make corrective payments. Gee also had difficulty obtaining information on the gross commissions paid by the insurers, and she did not acquire certain information until January 8, 2010. Tensions between the parties continued to mount and eventually Gee was terminated in September 2010.

### The Trial Court's Ruling

On all claims, the trial judge found in favor of Gee. Regarding the statute of limitations, the judgment did not specify why the statute did not bar any of Gee's claims or when any specific breach occurred. It simply stated that:

> [w]hether Gee's cause of action accrued in September 2007, when she merely noticed her checks were less, on January 8, 2010, when the "gross" was disclosed, in July 2010, when she first discovered concealment of a L&H commission, or in September 2010, when Wardell repudiated the agreement, Gee's causes of action for breach of an oral agreement accrued within the 4-year Statute. 95.11(3)(k), Fla. Stats.

On Gee's breach of contract claims, the court entered a final judgment for $100,038.28 against Access, which included renewal commissions and prejudgment interest.

### *The Parties' Contract Was Divisible, So the Statute of Limitations Began to Run at the Time of Each Discrete Breach*

Access views this case as a single contract where the initial breach occurred on March 21, 2005;[3] it argues that since the breach of contract cause of action accrued on that date, the statute of limitations ran on March 21, 2009, making Gee's claims untimely. However, for statute of limitations purposes, the proper view of the parties' agreement was that it was a divisible contract, meaning that the failure to pay each commission was a separate breach subject to its own four-year statute of limitations.

Generally, "the issue of whether [a] claim is barred by the statute of limitations is a question of law subject to de novo review." *Beltran v. Vincent P. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla. 4th DCA 2013); *Fox v. Madsen*, 12 So. 3d 1261, 1262 (Fla. 4th DCA 2009). However, the triggering event for the running of the statute of limitations in this case is when the "last element constituting" the breach of contract occurred. § 95.031(1), Fla. Stat. (2014). The occurrence of a breach, or breaches, is a question of fact. *See Moore v. Chodorow*, 925 So. 2d 457, 461 (Fla. 4th DCA 2006) (citing *Haiman v. Fed. Ins. Co.,* 798 So. 2d 811, 812 (Fla. 4th DCA 2001)). Here, the application of the statute of limitations is a mixed question of law and fact.

"A legal or equitable action on a contract . . . not founded on a written instrument" is governed by a four-year statute of limitations. § 95.11(3)(k), Fla. Stat. (2011); *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1144 (Fla. 4th DCA 2008). For purposes of the statute of limitations, a cause of action for breach of contract accrues at the time of the breach. *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818, 820 (Fla. 1996); *Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. 4th DCA 2006) ("Florida has followed this general rule that a cause of action for breach of contract accrues at the time of the breach, 'not from the time when consequential damages result or become ascertained.'") (quoting *Fradley v. Cnty. of Dade*, 187 So. 2d 48, 49 (Fla. 3d DCA 1966)).

The contract in this case contemplated that Access would pay Gee commissions at different times in the future, upon its receipt of premiums and renewal premiums. Such a contract is divisible, in that it is a continuing contract which contemplates performance and payments upon the occurrence of separate, distinct events. The receipt of a premium or renewal premium from an insurer is such a separate, distinct event. *See* 15 Williston on Contracts § 45:19 (4th ed.) (quoting *Sagebrush Dev., Inc. v. Moehrke*, 604 P.2d 198, 202-03 (Wyo. 1979)). Where a contract is

---

[3]In a motion for summary judgment and at trial, Access contended that the statute of limitations began to run on March 17, 2006, the date it claimed Gee was no longer a salaried employee.

divisible, "breaches of its severable parts give rise to separate causes of action" and "the statute of limitations will generally begin to run at the time of each breach." 15 Williston on Contracts § 45:20 (4th ed.).

We applied the statute of limitations to a divisible contract in *Hannett v. Bryan*, 640 So. 2d 203 (Fla. 4th DCA 1994). That case involved a contract which contemplated that syndication fees in a real estate development would be paid at different times in the future; the plaintiff's entitlement to "his portion of the fees did not ripen until" a syndication fee payment was made. *Id.* at 204. Analogizing this type of contract to the installment payment contract in *Isaacs v. Deutsch*, 80 So. 2d 657 (Fla. 1955), we held that the statute of limitations for each payment due the plaintiff began to run when a syndication fee payment was made. *Id.*; *see also Vetro v. City of Coral Springs*, 901 So. 2d 875 (Fla. 4th DCA 2004); *Bishop v. State, Div. of Ret.*, 413 So. 2d 776 (Fla. 1st DCA 1982); *Greene v. Bursey*, 733 So. 2d 1111 (Fla. 4th DCA 1999) (involving monthly installment payments on a promissory note and holding that the statute of limitations had run on some payments but not others); *Baker v. Brannen/Goddard Co.*, 559 S.E.2d 450, 454 (Ga. 2002) (holding that commission contract "for an indefinite total amount which was payable in installments" over an uncertain period was a divisible installment contract).

The notion that the parties' agreement in this case was a divisible contract was supported by the evidence at trial. Wardell conceded that his agreement with Gee was on a "case-by-case basis," and agreed that every time a case came in he would sit down with Gee and make a different agreement.

Because Access believes that the entire cause of action accrued in 2005, it concludes that the trial court must have applied the delayed discovery doctrine to avoid the statute of limitations. The court appears to have concluded that the cause of action did not accrue until Gee became aware that something was "amiss." For specified causes of action, the Legislature has established exceptions that would toll the statute of limitations. *See* §§ 95.031(2)(a) & (b), 95.11(4)(a) & (b), 95.11(7), Fla. Stat. (2011). They are often referred to as the "delayed discovery doctrine." *See Davis v. Monahan*, 832 So. 2d 708, 708 (Fla. 2002); *Hearndon v. Graham*, 767 So. 2d 1179, 1181 (Fla. 2000). These statutory sections toll the statute of limitations in cases where a plaintiff was unaware or could not discover that a cause of action had accrued. *Id.* *See Hearndon*, 767 So. at 1181-82 (applying doctrine to lack of memory in a childhood sexual abuse claim).

As Access correctly contends, the Florida Supreme Court has refused to apply the delayed discovery doctrine to breach of contract cases. *See Fed. Ins. Co. v. Sw. Fla. Ret. Ctr., Inc.*, 707 So. 2d 1119, 1121-22 (Fla. 1988). The Supreme Court reinforced this limited application of the delayed discovery doctrine when overruling this Court's decision in *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002). The delayed discovery doctrine was found not to apply to claims alleging breach of fiduciary duty, civil theft, conspiracy, conversion, and unjust enrichment, even though there were compelling reasons to forgive the untimely filling of the lawsuit. *Id.* at 712. This court later specifically declined to expand the delayed discovery doctrine to breach of contract cases.[4] *Med. Jet, S.A.*, 941 So. 2d at 578.

If Access were correct about the accrual of the causes of action, then the statute of limitations would bar the claims, as the delayed discovery doctrine does not apply. However, the parties' contract was divisible into separate parts, so that the statute of limitations began to run at the time of each breach.

Applying the four-year statute of limitations, claims based on premium payments received by Access after January 11, 2007, are not barred by the statute of limitations; claims based on premium payments received before to January 11, 2007, are barred by the statute.[5] The final judgment did not use this temporal division to award damages. We remand to the circuit court for further proceedings for the court to award damages only for commission claims that accrued after January 11, 2007.

---

[4]In 2013, the supreme court approved Standard Jury Instructions–Contract and Business Cases. *In re Standard Jury Instructions–Contract & Bus. Cases*, 116 So. 3d 284, 287 (Fla. 2013). Section 416.32 of these jury instructions addressed the affirmative defense of the statute of limitations. *Id.* at 327. The note on use for this section states, "[t]he delayed discovery doctrine has not been applied to breach of contract actions in Florida." *Id.* (citing *Med. Jet, S.A.* v. *Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. 4th DCA 2006), and *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002)).

[5]We note that the facts might have supported an estoppel; however, Gee did not raise estoppel in the circuit court or on appeal, so the issue is waived. *See Fla. Dep't of Health & Rehabilitative Servs. v. S.A.P*, 835 So. 2d 1091, 1099 (Fla. 2002) (stating a main purpose of the doctrine of equitable estoppel "is to prevent a party from profiting from his or her wrongdoing" and applies where the wrongdoer engaged in acts of concealment); *see also Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139 (Fla. 4th DCA 2008) (applying the doctrine of equitable estoppel so that the cause of action for breach of contract did not accrue until it became clear the employer did not intend to honor the oral employment agreement).

We have considered the other issues raised on this appeal, including the claims for attorney's fees, and find no reversible error.

*Affirmed in part, reversed in part, and remanded to the circuit court for further proceedings consistent with this opinion.*

TAYLOR, J., and SHEPHERD, CAROLINE, Associate Judge, concur.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**