Annette STARLING, as Personal Representative of the Estate of Bennie Starling, Plaintiff,

v.

R.J. REYNOLDS TOBACCO COMPANY, et al., Defendants.

Case No. 3:09–cv–10027–J–37JBT.

United States District Court, M.D. Florida, Jacksonville Division.

Nov. 2, 2011.

Order Adhering to on Denial of Reconsideration Dec. 22, 2011.

Charlie Easa Farah, Jr., Eddie Easa Farah, Farah & Farah, PA, Janna M. Blasingame, Norwood Sherman Wilner, Stephanie J. Hartley, Richard J. Lantinberg, The Wilner Firm, P.A., Jacksonville, FL, Elizabeth J. Cabraser, Richard M. Heimann, Scott P. Nealey, Robert J. Nelson, Sarah R. London, San Francisco, CA, Henry G. Garrard, III, Blasingame, Burch, Garrard & Ashley, PC, Athens, GA, Michael London, Douglas & London, PC, Jennifer Gross, New York, NY, Kathryn E. Barnett, Kenneth S. Byrd, Nashville, TN, Raymond Douglas Gentile, Douthit, Frets, Rouse, Gentile & Rhodes, L.L.C., Kansas City, MO, for Plaintiff.

Benjamin H. Hill, III, Bonnie C. Daboll, Cathy A. Kamm, Tampa, FL, David Clifford Reeves, Joseph W. Prichard, Jr., Robert B. Parrish, Moseley, Prichard, Parrish, Knight & Jones, John Andrew Devault, III, Patrick P. Coll, Bedell, Dittmar, Devault, Pillans & Coxe, PA, Jacksonville, FL, Stephanie E. Parker, John Fachet Yarber, Jones Day, Atlanta, GA, David E. Kouba, Arnold & Porter, LLP, Brittany E. Hamelers, Judith Bernstein–Gaeta, M. Sean Laane, Washington, DC, Kenneth J. Reilly, Aviva L. Wernick, Nicolas Swerdloff, Miami, FL, Theodore V.H. Mayer, Hughes, Hubbard & Reed, LLP, Keri Arnold, Alan E. Mansfield, Cecily C. Williams, Daniel H. Weiner, Diane Elizabeth Lifton, Robb W. Patryk, New York, NY, Joshua Reuben Brown, Rumberger, Kirk & Caldwell, PA, Orlando, FL, for Defendants.

## ORDER

ROY B. DALTON, JR., District Judge.

This cause is before the Court on the following:

1) Defendants' Motion for Judgment on the Pleadings and Incorporated Memorandum of Law (Doc. No. 34) ("Motion"), filed on July 13, 2011; and

2) Joint Motion to Stay Proceedings (Doc. No. 50), filed on August 31, 2011.

Resolution of Defendants' Motion for Judgment on the Pleadings requires this Court to examine Florida's Wrongful Death Act,[1] how Florida District Courts of Appeal have interpreted the Act's procedural requirements,[2] and how the Florida Supreme Court would likely interpret the Act's requirements, particularly as it applies to the *Engle* progeny cases.[3] The Court must determine whether it was appropriate for the plaintiff in this action, Mrs. Annette Starling ("Mrs. Starling" or "Plaintiff") to amend her late husband's ("Mr. Starling") personal injury complaint

---

1. Fla. Stat. §§ 768.16–768.26 (2011) ("Florida's Wrongful Death Act" or "Wrongful Death Act" or "the Act").

2. There is a conflict between the District Courts of Appeal on this issue. This conflict is further addressed in Section I, Part C., below.

3. This Court refers to the thousands of cases that were filed in this Court and Florida state courts after the culmination of the *Engle* trilogy as the "*Engle* progeny" cases. The *Engle* trilogy consisted of: *Reynolds Tobacco Co. v. Engle*, 672 So.2d 39 (Fla.3d Dist.Ct.App.1996) (*Engle I*); *Liggett Group Inc. v. Engle*, 853 So.2d 434 (Fla.3d Dist.Ct.App.2003) (*Engle II*); *Engle v. Liggett Group, Inc.*, 945 So.2d 1246 (Fla.2006) (*Engle III*).

to state a cause of action under the Wrongful Death Act. Some Florida District Courts of Appeal, such as the Third District, have determined that a personal representative cannot amend a personal injury complaint to state a cause of action for wrongful death. *See Capone v. Philip Morris U.S.A., Inc.,* 56 So.3d 34 (Fla.3d Dist.Ct.App.2010)[4] (*"Capone"*). Others have decided that it is appropriate for a decedent's personal representative to amend a personal injury complaint to state a cause of action for wrongful death. *See Niemi v. Brown & Williamson Tobacco Corp.,* 862 So.2d 31, 33 (Fla.2d Dist.Ct. App.2003) (*"Niemi"*).

 It is axiomatic that this Court must apply Florida's substantive law to decide Defendants' Motion for Judgment on the Pleadings. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Eleventh Circuit instructs that "[w]here the highest court—in this case, the Florida Supreme Court—has spoken on the topic, [federal courts] follow its rule. Where that court has not spoken, however, [federal courts] must predict how the highest court would decide this case." *Molinos Valle Del Cibao, C. por A. v. Lama,* 633 F.3d 1330, 1348 (citing *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.,* 420 F.3d 1317, 1326 n. 5 (11th Cir.2005)). The Florida District Courts of Appeal "provide data for this prediction," and federal courts generally "must follow the decisions of these intermediate courts." *Id.* (citations omitted). However, the federal courts "may disre-

gard these decisions if persuasive evidence demonstrates that the highest court would conclude otherwise." *Id.* (citations omitted). For the reasons discussed herein, the Court finds that there is persuasive evidence, including the legislative intent of the Wrongful Death Act (Fla.Stat. § 768.21), that the Florida Supreme Court would allow an *Engle* Smoker's personal representative to amend the Smoker's personal injury complaint to state a cause of action under the Act.

## I. APPLICABLE LAW

### A. Florida's Wrongful Death Act versus Florida's Survival Statute

 Florida's Survival Statute[5] provides: "No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted and defended in the name of the person prescribed by law." Under this statute, "the representative recovers only such damages as were suffered by his decedent." *Stokes v. Liberty Mut. Ins. Co.,* 213 So.2d 695, 697 (Fla.1968).

 In 1973, the Florida Legislature enacted Florida's Wrongful Death Act to limit the application of the Survival Statute to the extent that an action for personal injuries resulting in death, previously maintainable by a decedent's personal representative under the survival statute, now abates, and the personal representative must instead file a wrongful death action. *See* Fla. Stat. §§ 768.16–768.26. "In merging the two prior actions, the legisla-

---

**4.** On October 17, 2011, the Florida Supreme Court accepted jurisdiction over *Capone. Capone v. Philip Morris U.S.A., Inc.,* 56 So.3d 34 (Fla.3d Dist.Ct.App.2010), *appeal docketed,* No. SC11–849 (Fla. Apr. 26, 2011). It ordered petitioners to file their initial brief on the merits on or before November 14, 2011 and respondents to file their answer brief twenty days after service of petitioner's initial

brief. *Id.* It deferred setting a date for oral argument, but directed the Clerk of the Third District Court of Appeal to file the original record on or before December 16, 2011. *Id.*

**5.** Fla. Stat. § 46.021 (2011) ("Florida's Survival Statute" or "Survival Statute" or "Section 46.021").

ture transferred the items of damage for loss of earnings, medical expenses, and funeral expenses from the survival statute to the new Wrongful Death Act." *Martin v. United Sec. Servs., Inc.*, 314 So.2d 765, 769 (Fla.1975); *Knowles v. Beverly Enter.-Fla., Inc.*, 898 So.2d 1, 9 (Fla.2004) ("Damages are limited to the survivor's loss of support and services, companionship, and his or her own pain and suffering. The estate may also recover loss of earnings of the deceased and medical and funeral expenses.") (citation omitted); Fla. Stat. § 768.21. The Wrongful Death Act allows the personal representative of an estate "to recover for (1) loss of past and future support and services; (2) loss of companionship; and (3) his or her **own** mental pain and suffering from the date of the injury." *In re Air Crash on Dec. 20, 1995 Near Cali, Colombia*, No. 96–MD–1125, *et al.*, 1998 WL 1770590, *2 (S.D.Fla.1998) (emphasis in original). Additionally, the personal representative may seek punitive damages in wrongful death cases. *Martin*, 314 So.2d at 771.

▇ In pertinent part, the Wrongful Death Act provides: "When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." Fla. Stat. § 768.20; *see Martin*, 314 So.2d at 770. "However, the survival statute is still applicable to preserve other actions which the decedent may have brought or was bringing prior to his death," including personal injury actions, in which the personal injury is not also the cause of death. *Id.* at 770 n. 18. The Act provides a right of action "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any per-

son, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued . . . ." Fla. Stat. § 768.19.

### B. The *Capone* Decision [6]

The Wrongful Death Act's directive that "any such action pending at the time of death shall abate" is particularly problematic for the *Engle* progeny cases, in light of the Third District Court of Appeal's *Capone* decision, which it issued on December 1, 2010. According to the Third District, this language requires the *Engle* Smokers' [7] personal representatives to file a new complaint, pay a new filing fee, and receive a new case number, before they can move forward with a wrongful death action. *See id.* at 36.

In *Capone*, Mrs. Capone served as the personal representative of her husband's estate. Her husband, an *Engle* Smoker, died in July of 2006 while awaiting his trial against Philip Morris and other cigarette manufacturers for personal injuries allegedly caused by his addiction to cigarettes. *Id.* at 35. On January 14, 2008, Mrs. Capone "moved to amend the complaint to assert what she claimed was a new cause of action for injured smokers created by the Florida Supreme Court in *Engle v. Liggett Group, Inc.*, 945 So.2d 1246 (Fla. 2006), and moved to substitute herself as the estate's personal representative." *Capone*, 56 So.3d at 35.

Philip Morris filed a motion to dismiss Mrs. Capone's amended complaint, claiming that Mr. Capone's "personal injury action was abated when [he] died and that any action for wrongful death had to be filed as a new lawsuit pursuant to Florida Statutes Section 768.20." *Id.* It was undis-

---

6. *Capone*, 56 So.3d 34.

7. In this Order, the phrase *"Engle* Smoker" refers to the alleged *Engle* class member.

puted that Mr. Capone died of his tobacco related injuries. The lower court dismissed the complaint, finding that Florida's Wrongful Death Act precluded Mrs. Capone from amending her complaint or substituting herself as the plaintiff in Mr. Capone's personal injury action. *Id.* The Third District Court of Appeal agreed, holding:

> The original complaint for personal injury could not be amended, on [plaintiff's] death, to include a new wrongful death claim because Florida law establishes that a personal injury claim is extinguished upon the death of the plaintiff, and any surviving claim must be brought as a new and separate wrongful death action—it cannot be brought as an amendment to a personal injury action.

*Id.* at 36 (citations omitted).

The court declined to consider the implications, if any, the *Engle* findings might have had on Mrs. Capone's case. It found the analysis unnecessary because Mrs. Capone "moved to amend her complaint on January 14, 2008, more than one year from the January 11, 2007, *Engle* mandate." *Id.* Thus, it did not analyze whether the Florida Supreme Court would have intended that the *Engle* findings apply to an *Engle* Smoker's personal representative's wrongful death action. Nevertheless, the court's interpretation of the procedural requirements of the Wrongful Death Act effectively denies the *Engle* Smokers' personal representatives any benefit from *Engle* findings if they assert a wrongful death or survival action any time after January 11, 2008. *See id.; Engle III,* 945 So.2d at 1277.

### C. The Conflict Between the Florida District Courts of Appeal

In May 2011, Mrs. Capone appealed the Third District's *Capone* decision to the Florida Supreme Court. *Capone,* 56 So.3d 34, *appeal docketed,* No. SC11–849 (Fla. 2011). Among other reasons for filing her petition for review, Mrs. Capone asserted that Florida District Courts of Appeal are in conflict as to the Florida Wrongful Death Act's procedural requirements. Brief for Petitioner at 7 *Capone v. Philip Morris U.S.A.,* No. SC11–849 (Fla. Apr. 26, 2011). Mrs. Capone seeks guidance from the Florida Supreme Court on the following questions regarding the death of a plaintiff in a personal injury action. First, "[d]oes the court file 'self-destruct' requiring an entirely new lawsuit be filed?" Alternatively, "is it a simple matter of substituting in the personal representative to continue the personal injury claim, convert it to a wrongful death claim, or pursue both claims in the alternative?" *Id.* at p. 8. To date, that action remains pending at the Florida Supreme Court.

Mrs. Capone and other *Engle* progeny plaintiffs (including Mrs. Starling, in the instant action) argue that the Third District Court of Appeal's *Capone* decision conflicts with the Second District Court of Appeal's *Niemi* decision. In *Niemi,* the decedent's personal representative sought leave to amend the decedent's personal injury complaint to assert a claim for wrongful death where the decedent died during the pendency of personal injury action. *Niemi,* 862 So.2d at 31. Reversing the trial court's denial of the personal representative's request to amend the pleadings "to plead both a personal injury action and an alternative wrongful death action," the Second District Court of Appeal noted that the personal representative had every right to amend her complaint and that the pending personal injury lawsuit did not "self-destruct" when the plaintiff to that suit dies. *Niemi,* 862 So.2d at 33, 34. The *Niemi* Court further noted that the decedent's personal representative

may be "required to plead both a personal injury action and an alternative wrongful death action," unless the parties agreed upon the cause of death. *Id.* at 34.

The key distinction between *Niemi* and *Capone* relates to the cause of death. In *Capone,* it was undisputed that the decedent's personal injury caused his death, whereas in *Niemi,* the cause of death was unknown. *Capone,* 56 So.3d at 36; *Niemi,* 862 So.2d at 34. Florida law is clear that where the cause of death is the personal injury, a personal representative cannot be substituted for the decedent to pursue the personal injury action under the Survival Statute—in fact, *Niemi* and *Capone* both serve as support for this proposition. *See Capone,* 56 So.3d at 36; *Niemi,* 862 So.2d at 34. Florida law is equally clear, however, that when the cause of death issue is unresolved, a personal representative is permitted to amend a complaint to allege alternative theories under the Survival Statute and the Wrongful Death Act. *Niemi,* 862 So.2d at 34 (citing *Poole v. Tallahassee Mem'l Hosp., Med. Ctr., Inc.,* 520 So.2d 627 (Fla. 1st Dist.Ct.App.1988); *Smith v. Lusk,* 356 So.2d 1309 (Fla.2d Dist.Ct.App.1978)).

In light of the latter, the conflict between the Third District Court of Appeal's *Capone* decision and the Second District Court of Appeal's *Niemi* decision becomes apparent. Whereas *Capone* expressly states that a wrongful death action "cannot be brought as an amendment to a personal injury action," *Niemi* allows a plaintiff to amend a complaint for personal injuries to state alternative wrongful death and survival claims. *Capone,* 56 So.3d at 36; *Niemi,* 862 So.2d at 34. In the circumstances envisioned in *Niemi,* if it was later discovered that the plaintiff's personal injury caused his or her death, then the original personal injury action would no longer be viable (i.e., it would "abate"), and the subsequently added wrongful death claim would move forward as the appropriate cause of action. Thus, a case like *Niemi* could reach the very result that *Capone* proscribes—a plaintiff could eventually proceed to trial with a wrongful death action that originated as an amendment to a personal injury complaint.[8]

This conflict is not isolated to the Third District Court of Appeal and Second District Court of Appeal. The First District Court of Appeal has allowed personal representatives to amend a decedent's personal injury complaint to allege a wrongful death claim. In *Williams v. Bay Hospital,* 471 So.2d 626, 628 (Fla. 1st Dist.Ct.App. 1985), Mrs. Williams filed a personal injury lawsuit seeking damages allegedly caused by the defendant hospital's failure to inform her about the results of an x-ray examination that indicated she had abnormalities around her rib cage. Mr. Williams, her husband, brought consortium claims as well. *See id.* After filing the suit, Mrs. Williams found a lump on the right side of her neck, and died of lung cancer shortly thereafter. *Id.* Because she

---

8. For some other examples of the cases in which the Second District Court of Appeal did not take issue with amendments to personal injury complaints to state a cause of action for wrongful death, *see First Protective Ins. Co. v. Featherston,* 906 So.2d 1242, 1243 (Fla.2d Dist.Ct.App.2005) (parents of a fourteen-month-old sued a home day care provider because she stopped breathing while in its care, and when the infant died, "the lawsuit was amended to assert a claim for wrongful death"); *Baione v. Owens–Illinois, Inc.,* 599 So.2d 1377, 1378 (Fla.2d Dist.Ct.App.1992) (plaintiff filed a personal injury lawsuit after he contracted mesothelioma, an asbestos-induced form of cancer, allegedly from exposure to products containing asbestos on Navy ships, and died while the action was pending, "the action was amended to one of wrongful death brought by [his wife] as the personal representative of [his] estate").

died while her personal injury suit was pending, Mr. Williams, as personal representative of her estate, was substituted as the plaintiff in the action. *Id.* The defendant moved for summary judgment, arguing that at the time of Mrs. Williams's x-ray examination, her cancer was already incurable. *Id.* The trial court granted the defendant's motion, and Mr. Williams appealed. *Id.*

On appeal, Mr. Williams conceded that following Mrs. Williams's death, "discovery proceeded in this cause **in anticipation of the filing of an amended complaint seeking damages for wrongful death.**" *Id.* at 628 (emphasis added). He argued that his substitution "as plaintiff in the action merely converted the case into a survival action," although he made no effort "to amend the complaint by adding a reference to Section 46.021, Florida Statutes (1983), the survival of actions statute." *Id.* at 629. The hospital argued that Mr. Williams's complaint was "essentially an action for wrongful death," since the complaint sought "damages for the loss of a 'chance to survive,' or live longer, which are allegations of 'death-resulting personal injuries,' which no longer may be brought under the survival statute." *Id.*

The First District Court of Appeal reversed the trial court's decision granting summary judgment. It found that although the husband could not pursue a wrongful death action because the defendant had not caused his wife's death, he could pursue a survival action on her behalf, for pain and suffering for "non-death-resulting injuries" defendant allegedly caused during her lifetime. *Id.* The appellate court remanded the case, finding that Mr. Williams's failure to amend his complaint to include a "specific reference to reliance on Section 46.021" was not "fatal" because he was "**entitled to amend as**

**necessary to clarify the basis for the action.**" *Id.* (emphasis added).

Trial courts in the Third District (before the appellate court decided *Capone* ) and Fifth District have relied on the Fifth District Court of Appeal's *Taylor v. Orlando Clinic,* 555 So.2d 876 (Fla. 5th Dist.Ct.App. 1989) for the proposition that a personal representative cannot amend a personal injury complaint to state a cause of action for wrongful death. In *Taylor,* the appellate court held, "[T]he trial court's action in dismissing the deceased patient's personal injury medical malpractice action was proper, not because the motion to substitute a wrongful death action was not made within the 90 day rule time limitation but because the motion erroneously attempted to substitute a wrongful death action for the abated personal injury negligence action." *Id.* at 879.

For example, on January 4, 2000, the Honorable Judge Donner of the Eleventh Judicial Circuit Court in and for Dade County denied a plaintiff's motion to amend a personal injury complaint to include a claim for wrongful death, holding that granting the personal representative's motion to amend would allow her to "erroneously substitute a wrongful death action for the abated personal injury negligence action." *Pickett v. R.J. Reynolds Tobacco Co.,* No. 97–29321 CA 23, 2000 WL 35789457 (Fla.Cir.Ct. Jan. 4, 2000). More recently, the Honorable Judge Parsons of the Seventh Judicial Circuit Court in and for Volusia County, Florida felt that his "obligation ... to follow the Fifth [District Court of Appeal]" precluded him from allowing an *Engle* Smoker's personal representative to amend the complaint in the deceased *Engle* Smoker's personal injury action to state an outright claim for wrongful death (as opposed to pleading in the alternative). *Powers v. R.J. Reynolds Tobacco Co., et al.,* No. 2009–30670 (Fla.Cir.

Ct. Apr. 25, 2011) (transcript of proceedings before the Honorable William A. Parsons, Circuit Court Judge).

## II. PROCEDURAL HISTORY

### A. MID–1990's THROUGH *ENGLE III*

Just over sixteen years ago, on August 29, 1995, Mr. Starling filed a Complaint in the Eleventh Judicial Circuit Court in and for Dade County, Florida against a number of cigarette manufacturers, including Defendants in the instant action. (*See* Case No. 09–cv–10027–J–34–JBT, "Starling Docket," Doc. No. 51–1.) He voluntarily dismissed that action only to file a new complaint in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida ("Fourth Judicial Circuit") about a month later. (Starling Docket, Doc. No. 51–3.)

While Mr. Starling's Fourth Judicial Circuit action was underway, the Third District Court of Appeal of Florida issued the *Engle I* decision,[9] which certified the following plaintiff's class ("*Engle* class"):

All Florida citizens and residents, **and their survivors,** who have suffered, presently suffer or have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine. The class shall specifically exclude officers, directors, and agents of the [d]efendants.

*Engle I,* 672 So.2d at 40 (emphasis added). After the Third District Court of Appeal certified the class, the trial court issued its first post-*Engle I* trial plan, which included three phases. *Engle II,* 853 So.2d at 441–42 (discussing the trial court procedural history following the *Engle I* decision); *See Brown,* 611 F.3d at 1326–29 (discussing the phases of the *Engle* trilogy trial plan).

Sometime after the *Engle* class was certified, Mr. Starling sought voluntary dismissal of his second lawsuit, allegedly "in favor of joining the class action." (Starling Docket, Doc. No. 51, p. 2; Starling Docket, Doc. No. 51–4, p. 3.)[10] Just over a year later, on July 7, 1999, at the conclusion of Phase I of the *Engle* trilogy trial plan, the jury rendered a verdict for the *Engle* class and against the tobacco company defendants on all counts. *Engle III,* 945 So.2d at 1256–57. The Phase I jury "answered certain general questions about the defendants' products and conduct. The questions related to some, but not all of the elements of each legal theory alleged . ... The jury did *not* determine whether defendants were liable to anyone." *Brown,* 611 F.3d at 1327–28 (emphasis and alteration in original) (quoting *Engle II,* 853 So.2d at 450).

At the conclusion of Phase II of the *Engle* trial plan, during which the Phase I jury decided the issue of damages, the defendants appealed the Phase I and

---

9. The *Engle* class action first began in May of 1994, when six named individuals filed a complaint seeking damages for injuries allegedly caused by smoking. The plaintiffs filed in Florida state court against the "major domestic makers of cigarettes" and two industry organizations seeking over $100 billion in both compensatory damages and punitive damages. *Brown v. R.J. Reynolds Tobacco Co.,* 611 F.3d 1324, 1326 (11th Cir.2010). "The plaintiffs asserted claims of strict liability, negligence, breach of express warranty, breach of implied warranty, fraud, conspiracy

to commit fraud, and intentional infliction of emotional distress." *Id.* (quoting *Engle II,* 853 So.2d at 441) (internal quotation marks omitted).

10. This information is provided merely to give context to the duration of Mr. Starling's litigation against some of the same Defendants that are parties in this action. Whether Mr. Starling was a member of the *Engle* class is a factual question.

Phase II verdicts. On appeal, the Third District Court of Appeal decertified the *Engle* class and reversed the compensatory damages award and the punitive damages award. *Id.* The *Engle* class appealed to the Florida Supreme Court.

Approximately three years later, at the end of 2006, the Florida Supreme Court issued the *Engle III* decision. It determined that the trial court "had not abused its discretion in certifying the *Engle* class for Phases I and II, but also decided that continued class action treatment for Phase III of the trial plan [was] not feasible because individualized issues, such as legal causation, comparative fault, and damages [would] predominate." *Brown*, 611 F.3d at 1328 (quoting *Engle III*, 945 So.2d at 1255) (internal quotation marks and citations omitted). The court maintained that "[i]nvalidating the completed class action proceedings on manageability and superiority grounds after a trial has occurred does not accord with common sense or logic." *Engle III*, 945 So.2d at 1267.

The Florida Supreme Court ultimately determined that the "pragmatic solution" would be to decertify the class, "retaining the jury's Phase I findings [ (the *Engle* findings) ][11] other than the fraud and intentional infliction of emotion distress claims, which involved highly individualized determinations, and the finding on entitlement to punitive damages questions, which was premature." *Id.* at 1269.

The court explained that "[c]lass members [could] choose to initiate individual damages actions and the Phase I common core findings ... [would] have res judicata[12] effect in those trials." *Id.* The Florida Supreme Court allowed class members to file individual lawsuits within one year of the court's mandate, which was issued on January 11, 2007. *Id.* at 1277. At the time the Florida Supreme Court issued its *Engle III* decision, there were an estimat-

---

11. The Florida Supreme Court approved the following *Engle* findings for the class:

(1) (that smoking cigarettes causes aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, chronic obstructive pulmonary disease, coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, adenocarcinoma, large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer); (2) (that nicotine in cigarettes is addictive), (3) (that the defendants placed cigarettes on the market that were defective and unreasonably dangerous), (4)(a) (that the defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both), (5)(a) (that the defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public

would rely on this information to their detriment), (6) (that all of the defendants sold or supplied cigarettes that were defective), (7) (that all of the defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants), and (8) (that all of the defendants were negligent). *Engle III*, 945 So.2d at 1276–77 (emphasis and parenthesis around numbers added for clarity).

12. The Eleventh Circuit's *Brown* opinion discusses the difficulty with the Florida Supreme Court's use of the term "res judicata." *Brown*, 611 F.3d at 1331–35. "[T]he Florida Supreme Court's direction that Phase I approved findings were to have a 'res judicata effect' could have referred to claim preclusion, to issue preclusion, or to both." *Id.* at 1332. The *Brown* Court found that "the Florida Supreme Court's direction that the approved findings were to have 'res judicata effect' in future trials involving former class members necessarily refers to issue preclusion." *Id.* at 1333.

ed 700,000 individual *Engle* class members, allegedly including Mr. Starling, left to file individual actions in trial courts throughout the state of Florida on or before January 11, 2008.[13] *See id.* at 1258; (*see also* Case No. 3:07–cv–760–J–HTS, "2007 Docket," Doc. No. 23, ¶¶ 30–32.).

The Majority in the *Engle III* decision noted that "the procedural posture of this case is unique and unlikely to be repeated." *Id.* at 1270 n. 12. What the court seemingly failed to realize is that regardless of whether the procedural posture of the *Engle* trilogy will be "repeated," its holding serves as binding precedent for the thousands of individual cases that now constitute the *Engle* progeny. As Justice Wells aptly concluded in his *Engle III* dissent, the Majority opinion has not, in reality, served as a "pragmatic solution," but rather, an endlessly "problematic" one. *Id.* at 1284 (citing Majority Op. at 1269). The issues presented by Defendants' Motion for Judgment on the Pleadings exhibits a few of the many "problems" that characterize the *Engle* progeny cases.

## B. POST–*ENGLE III* AND PRE–*CAPONE*

On August 16, 2007, well within the *Engle* savings period, Mr. Starling and thirty other plaintiffs filed a consolidated complaint ("Original Complaint") for personal injuries against R.J. Reynolds Tobacco Company, Philip Morris, USA, Inc., and Lorillard Tobacco Company ("Defendants"), pursuant to the *Engle III* decision. (*See* 2007 Docket, Doc. No. 1);[14] *Engle III*, 945 So.2d 1246. In the Original Complaint, Mr. Starling and the thirty additional plaintiffs alleged that "as a direct

and proximate result of [*Engle* Smokers'] smoking of Defendants' cigarettes, [*Engle* Smokers] suffered bodily injury." (*Id.* at ¶ 9.) The Original Complaint did not allege injuries or illnesses specific to Mr. Starling. Instead, it contained general allegations that "Defendants' cigarettes caused the [*Engle* Smokers] to develop one or more cigarette-related disease or medical condition and one or more of them resulted in or substantially contributed to [*Engle* Smokers'] injuries." (*Id.*)

On December 21, 2007, Mr. Starling and the thirty additional plaintiffs filed a consolidated "Amended Complaint." (2007 Docket, Doc. No. 23.) They included allegations that were tailored to encompass the *Engle* findings. For example, the consolidated plaintiffs alleged:

> As a direct and proximate result of smoking cigarettes manufactured by one or more Defendants, each [*Engle* Smoker] suffered from one or more of the diseases and medical conditions [set forth in the *Engle* findings]. The diseases and medical conditions suffered by each [*Engle* Smoker] was a result of his or her addiction to cigarettes that contain nicotine, and each [*Engle* Smoker's] diseases or medical conditions manifested during the class period and caused the injuries of all [*Engle* Smokers].

(*Id.* at ¶ 44.) Additionally, the consolidated plaintiffs added loss of consortium claims on behalf of their respective spouses. (*Id.* at ¶¶ 52–53.) These loss of consortium claims purportedly applied to Mrs. Starling, who was married to Mr. Starling

---

13. The one year period between January 11, 2007 to January 11, 2008 is referred to as the "*Engle* savings period" throughout this Order.

14. This action was just one of approximately forty-four similar actions filed in the United

States District Court, Middle District of Florida, Jacksonville Division during the *Engle* savings period. Within each of the forty-four actions, there were at least twenty named plaintiffs filing a consolidated complaint.

at the time the consolidated plaintiffs filed the Amended Complaint.

On October 5, 2007, the parties filed a Joint Motion to Stay all Proceedings and Memorandum of Law in Support. (2007 Docket, Doc. No. 6.) On December 3, 2007, this Court (the Honorable Henry Adams) granted the Motion to Stay, pending transfer to *In Re Engle Progeny Tobacco Products Liability Litigation*, MDL No. 1887. (2007 Docket, Doc. No. 21.) On February 25, 2008, pursuant to an Order from the Judicial Panel on Multidistrict Litigation denying transfer to *In re Engle Progeny Tobacco Products Liability Litigation*, MDL No. 1887, the Court lifted the stay. (2007 Docket, Doc. No. 30.) [15]

On March 18, 2008, Mr. Starling passed away at the age of seventy-nine. (Starling Docket, Doc. No. 38–4.) At the time of his death, this Court and the parties were working diligently to create a manageable trial plan for the thousands of *Engle* progeny cases filed during the *Engle* savings period. Mr. Starling's action was still consolidated with thirty other plaintiffs, but the parties recognized that the Court might ultimately sever the numerous consolidated cases. (*See* 2007 Docket, Doc. No. 35, p. 2.) By this point, the *Engle* Smokers, the original plaintiffs in these actions, were dying at a fairly constant rate.[16]

On April 9, 2008, the Court issued an Order requiring the parties to identify the first ten plaintiffs "they propose to try in these cases." (2007 Docket, Doc. No. 54, ¶ 6.) On May 12, 2008, Plaintiffs submitted their "Amended Proposed 10–case Trial Plan," including Mr. Starling as one of the first ten plaintiffs. (2007 Docket, Doc. No. 62, p. 9.) It is clear from this document, filed within three months of Mr. Starling's death, that he had passed away. Section 6.5 of Plaintiffs' Amended Proposed 10–case Trial Plan states:

> Bennie Starling was born on 4/14/19XX and began smoking Chesterfield cigarettes in 1942. He remained addicted through his time in the United States Air Force. He suffered diagnosis of lung cancer and emphysema in 1994. At that time, Mr. Starling underwent a thorocotomy by Dr. Robert Still to remove the upper left lung lobe due to adenocarcinoma of the lung. After the surgery, Mr. Starling was on several medications, full-time oxygen and ultimately died of his pulmonary diseases on 3/18/2008. He is survived by his wife of 56 years, Annette, and two grown children.

(*Id.* at p. 6.) When Defendants filed their Response to Plaintiffs' Amended Proposed 10–Case Trial Plan and to Questions from the Court on June 19, 2008, they acknowl-

---

**15.** On January 9, 2008, while the first stay was in effect in this Court, Mr. Starling and the thirty additional Plaintiffs filed a complaint for personal injuries in the Fourth Judicial Circuit. (Starling Docket, Doc. No. 38–3.) Plaintiffs brought this duplicate state court action against Liggett Group, LLC, Dorsal Tobacco Corp., Vector Group, Ltd., Council for Tobacco Research—USA, and The Tobacco Group., in addition to Defendants in this case. (*Id.* at p. 1.) Although it is unclear whether that action remains consolidated or if Mrs. Starling is proceeding individually at this time, she represents to the Court that the state court action is still pending. (Starling Docket, Doc. No. 46, p. 2.)

**16.** Like Mr. Starling, many members of the *Engle* class were elderly by the time the *Engle* progeny cases were filed in this Court. The Special Master's Report (Case No. 3:09–cv–10000–J–32JBT, "Master Docket," Doc. No. 147), which was issued on April 22, 2011, nearly three years after Mr. Starling died, noted that at the state court level, *Engle* Smokers' personal representatives have asserted that "thousands of *Engle* progeny … plaintiffs are literally dying while waiting for their cases to be tried[.]" (*Id.* at p. 54 n. 20 (alterations in original).)

edged Mr. Starling's death. (2007 Docket, Doc. No. 71, p. 7 ("Since three of the Proposed Plaintiffs' decedents (Rix, Starling, Thompson) died **after** their prior cases were dismissed, Defendants must take discovery concerning the events leading up to, and the causes of their deaths.") (emphasis in original).) In the chart included with their Response, entitled "Proposed Plaintiffs—Status of Discovery," Defendants listed **"Starling, Annette (wrongful death)"** as one of Plaintiffs in the 10–case proposal. (2007 Docket, Doc. No. 71–8, p. 4 (emphasis added).)

On October 14, 2008, approximately seven months after Mr. Starling died, the parties filed their second Joint Motion to Stay, pending resolution of (1) the parties' requested appeal of the Court's Order in *Bernice Brown v. R.J. Reynolds Tobacco Co.*, Case No. 3:07–cv–00761–J–25HTS (M.D.Fla. Aug. 28, 2008) and (2) Plaintiffs' requested appeal of the Court's Order in *Cooper v. R.J. Reynolds Tobacco Co.*, Case No. 3:08–cv–153–J–32HTS (M.D.Fla. Aug. 29, 2008). (2007 Docket, Doc. No. 81.) In the motion, the parties requested that "the Court stay discovery and pretrial proceedings in all pending *Engle* progeny cases...." (*Id.* at p. 4.) On October 30, 2008, the Court granted the joint motion and the second stay went into effect. (2007 Docket, Doc. No. 82, "October 2008 Order.")

On May 14, 2009, the Court issued an order *sua sponte* directing the Clerk to sever the approximately forty-four consolidated cases filed in this Court due to the "substantial logistical issues involved in handling these cases." (2007 Docket, Doc. No. 85, "May 2009 Order.") Each severed case was to include one plaintiff and the defendants. (*Id.* at ¶ 1.) The pending cases otherwise remained stayed. (*Id.* at ¶ 3.) Additionally, the May 2009 Order in-

structed the Clerk to create a new, separate *Engle* progeny docket. (*Id.*)

On November 27, 2009, the Court entered an Order (dated November 12, 2009) on the Master Docket, setting forth instructions about its use and purpose and reiterating that the stay would remain in effect for all pending *Engle* progeny cases. (Master Docket, Doc. No. 1, ¶ 5, "November 2009 Order.") The Court alerted the parties that, "[u]pon lifting the stay," it would "enter orders requiring the filing of an amended complaint and answer in each case." (*Id.*) The Court directed the Clerk to "close the originally filed cases ... and terminate all pending motions in all cases." (*Id.* at ¶ 6.) Finally, the Court directed the parties to re-file any pending motions with the appropriate new case style and case number **after it lifted the stay.** (*Id.* (emphasis added).)

In accordance with the May 2009 Order, the Clerk closed Mr. Starling's consolidated action on November 27, 2009, and designated the above styled case number to the *Starling* action. The first docket entry on the Starling Docket contains the November 2009 Order severing the consolidated cases, along with "[p]ertinent orders entered in some or all of the consolidated actions." (Master Docket, Doc. No. 1, p. 2.) Pursuant to the November 2009 Order, the *Starling* action remained stayed "until further order of the Court." (*Id.* at ¶ 5.)

On August 30, 2010, the parties filed a Joint Motion to Retain a Limited Stay in *Engle* Progeny Cases, requesting that the Court retain the stay in the *Engle* progeny cases except as to a group of ten proposed "lead cases" involving Defendants R.J. Reynolds Tobacco Company, Philip Morris USA Inc., and Lorillard Tobacco Company ("Defendants"). (Master Docket, Doc. No. 5.) Plaintiffs selected the "lead cases" as the first to be tried in this Court. On October 8, 2010, the parties filed separate

motions asking the Court to lift the stay in the proposed cases. (Master Docket, Doc. Nos. 8, 9.)

## C. POST-*CAPONE*

On December 22, 2010, less than one month after the Third District decided *Capone*, this Court issued its "First Omnibus *Engle* Order." (Master Docket, Doc. No. 42.) Most relevant to the case at hand, the Court lifted the stay in twelve *Engle* progeny cases (the ten "lead cases" and two back-up cases, with the *Starling* action as a back-up case) that were identified in Plaintiffs' Motion to Lift Stay and Request for Case Management Conference. (Master Docket, Doc. No. 8, pp. 4–5; *see also* Master Docket, Doc. No. 42, ¶ 1.) On January 26, 2011, the Court entered an Order *sua sponte* directing Plaintiffs to file amended complaints in the twelve activated cases "(naming only the respective individual plaintiffs) no later than February 18, 2011." (Master Docket, Doc. No. 56, pp. 1–2, "January 2011 Order.")

Pursuant to the January 2011 Order, Mrs. Starling filed her first complaint as the personal representative for Mr. Starling's estate, entitled "First Amended Complaint," on February 18, 2011. (Starling Docket, Doc. No. 17.) Mrs. Starling's First Amended Complaint unequivocally alleged a claim under Florida's Wrongful Death Act. (Starling Docket, Doc. No. 17 at ¶ 1.1); Fla. Stat. §§ 768.16–768.26.

In her First Amended Complaint, she stated that the "Decedent died of a tobacco related illness," but she did not specify which "tobacco related illness" allegedly caused his death. (*Id.* at ¶ 1.3.) She sought damages on behalf of Mr. Starling's estate and "each Survivor" in the form of medical and funeral expenses, loss of support and services, mental pain and suffering, interest and expenses, "as defined by the Florida Wrongful Death Act." (*Id.* at

¶¶ 10.1, 10.3.) Additionally, she noted her intention to further amend the First Amended Complaint to seek punitive damages.

On February 23, 2011, the Court *sua sponte* struck the first amended complaints in all twelve newly activated cases, including Mrs. Starling's complaint finding the complaints deficient for a number of reasons. (Master Docket, Doc. No. 91.) The Order specified that it did "not preclude any objections Defendants may raise on these and other related issues in the future," and instructed Plaintiffs to "file amended complaints in the twelve active cases (naming only the respective individual Plaintiffs) in accordance with the directives" of that Order. (*Id.* at p. 3.)

Accordingly, on March 3, 2011, Mrs. Starling filed her "Second Amended Complaint," addressing the deficiencies and making a few notable changes to the substance of her First Amended Complaint. (Starling Docket, Doc. No. 21.) First, Mrs. Starling specified the cause of Mr. Starling's death: lung cancer. (*Id.* at ¶ 4.) Mrs. Starling alleged:

As a direct and proximate result of smoking cigarettes manufactured and sold by Defendants, the Decedent suffered from Lung Cancer. Decedent's lung cancer and related medical conditions were a result of Decedent's addiction to cigarettes that contain nicotine, and Decedent's lung cancer and related medical conditions manifested during the [*Engle*] class period and caused the injuries to Decedent and Plaintiff.

(*Id.* at ¶ 13.) She further alleged that "[a]s a direct and proximate result of Decedent's smoking Defendants' cigarettes, Decedent suffered mental and emotional pain, medical and financial expenses, and shortened life expectancy. Decedent's lung cancer resulted in aggravation of previously existing conditions, physical pain

and suffering, mental and emotional distress, medical expenses, and shortened life expectancy." (*Id.* at ¶ 15.) Additionally, Mrs. Starling sought punitive damages. (*Id.* at ¶¶ 16, 38–40.)

### III. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

On July 13, 2011, Defendants filed their Motion for Judgment on the Pleadings and Incorporated Memorandum of Law. (Starling Docket, Doc. No. 34.) [17] Defendants assert that "[b]ecause Mr. Starling allegedly died from his personal injuries, by operation of Florida's Wrongful Death Act, the pending action abated and the original complaint could not be amended into a wrongful death action." (*Id.* at p. 2.)

Defendants argue that it was impermissible for Mrs. Starling to amend Mr. Starling's Amended Complaint (2007 Docket, Doc. No. 23), which was the operative complaint at the time the Court stayed the *Engle* progeny cases on its docket in October 2008 and before they were severed in May 2009, to the extent that she did—removing entirely his personal injury claims and stating only her own wrongful death claims. (*See* Starling Docket, Doc. No. 34, p. 4.) Defendants contend that because Mr. Starling's personal injury suit abated when his personal injuries caused his death, Mrs. Starling could not "substitute" herself as the plaintiff in his personal injury action, and, pursuant to their reading of *Capone,* she could not amend Mr. Starling's complaint to convert his personal injury action to her wrongful death action. (*Id.* at pp. 4–10); *see Capone,* 56 So.3d at 35.

Second, Defendants argue that Mrs. Starling's wrongful death claims, which she first alleged in her First Amended Complaint on February 18, 2011, were barred by the two-year statute of limitations for wrongful death actions. (Starling Docket, Doc. No. 34, p. 10); *see* Fla. Stat. § 95.11(4)(d) (2011) ("Section 95.11(4)(d)"). Section 95.11(4)(d) and the case law referencing it provide that an action for wrongful death must be commenced on or before the two year anniversary of the date of death. *See Vaughn v. City of Orlando,* No. 6:07–cv–1695–Orl–19GJK, 2008 WL 3540434, *6 (M.D.Fla. Aug. 12, 2008) (citing *Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1280 (11th Cir.2003); *Fulton Cnty. Adm'r v. Sullivan,* 753 So.2d 549, 552 (Fla.1999)). Defendants maintain that Mrs. Starling, as personal representative of her husband's estate, could have timely filed a separate wrongful death action at any point within two years after his death, but because she did not, the Court should grant judgment on the pleadings in their favor. (Starling Docket, Doc. No. 34, p. 10.)

On July 27, 2011, Mrs. Starling filed Plaintiff's Response in Opposition to Defendants' Motion for Judgment on the Pleadings. (Starling Docket, Doc. No. 38.) She asserts that Florida law does not require a personal representative to file an entirely new complaint to assert wrongful death claims, particularly where there is any doubt or dispute with regard to the cause of death. (*Id.* at p. 8 (citing *Niemi,* 862 So.2d at 33).) She correctly contends that "[n]othing in the text of the Wrongful Death Act suggests that when a plaintiff in a personal injury action dies from the personal injury, [his or her personal representative] must file a new lawsuit rather than amend the operative complaint to add an alternative or substitute a claim for wrong-

---

**17.** Defendants filed this Motion over three years after acknowledging that Mrs. Starling was pursuing a wrongful death action against them and almost five months after she filed her First Amended Complaint, alleging a cause of action under the Wrongful Death Act. (2007 Docket, Doc. No. 71–8, p. 4; Starling Docket, Doc. No. 17.)

ful death." (*Id.* (citing Fla. Stat. § 768.20).) Additionally, Mrs. Starling maintains that her wrongful death action is not barred by the statute of limitations, because some seven months after Mr. Starling's death, the *Starling* action was stayed pursuant to this Court's October 2008 Order. (*Id.* at pp. 11–12.) She argues that she could not file her amended complaint stating a cause of action for wrongful death until the Court lifted the stay on the twelve activated cases in January of 2011. (*Id.* at p. 11.)

Defendants argue that the Court imposed stay is irrelevant to Mrs. Starling's wrongful death action, maintaining that the stay did not preclude her from filing a separate wrongful death action within two years of the date of Mr. Starling's death. (Starling Docket, Doc. No. 54, p. 7.) They maintain that the stay "applied only to Mr. Starling's personal injury action" and that it "did not, and indeed could not, prevent Mrs. Starling from bringing her wrongful death action" before the statute of limitations ran. (Starling Docket, Doc. No. 40, p. 6.) Defendants arguments presume that the Third District correctly interpreted the Wrongful Death Act's procedural requirements, i.e., that the Act does not allow for a personal representative to amend a personal injury complaint to state claims for wrongful death. *See Capone,* 56 So.3d at 36.

## IV. ANALYSIS

### A. Amendment to Personal Injury Complaint to State Wrongful Death Claims

◼ The conflict between the Florida District Courts of Appeal notwithstanding, this Court finds that under Florida's Wrongful Death Act, a personal representative may be permitted to amend a personal injury complaint to state an alternative cause of action for wrongful death or an outright wrongful death action.[18] Either way, the "clear purpose" of the Wrongful Death Act is upheld; any recovery will "be for the living and not for the dead." *Martin,* 314 So.2d at 769 (citing Fla. L. Rev'n Comm'n, Rec. and Rep. on Fla. Wrongful Death Stats., at 41–42, It. 8 (Dec. 1969)).

The struggle with the procedural requirements envisioned by the Wrongful Death Act emanates from imprecise judicial language that has taken root and created a procedure that was never contemplated by the legislature. To the extent that the *Capone* decision may be read to interpret the Wrongful Death Act to require a personal representative to file an entirely new lawsuit to convert a personal injury claim to a wrongful death claim, where the plaintiff's personal injuries cause his or her death during the pendency of a personal injury litigation, the Court declines to accept that construction as it would be inconsistent with existing practice, illogical, and would constitute a restrictive interpretation of a remedial statute.

The suggestion that a separate action for wrongful death following the death of a plaintiff must be presented by filing a new complaint in a new lawsuit defies all logic and, while perhaps a boon to the judicial coffers from the standpoint of filing fees, would create a needless administrative

18. Before the Florida Supreme Court accepted jurisdiction over *Capone,* this Court had undertaken to analyze Florida law as it currently stands to enable the thousands of *Engle* progeny Plaintiffs with cases filed in this Court to understand its interpretation of the Wrongful Death Act's procedural requirements. Because the Florida Supreme Court only recently accepted jurisdiction, it is unlikely that it will issue its decision regarding the conflict for quite some time.

hoop that is not contemplated by the Act. *See* Fla. Stat. §§ 768.19–768.21. When the cause of death is unknown or in dispute, the *Niemi* Court's decision that the personal representative may amend the complaint to state an alternative cause of action for wrongful death should guide. *Niemi*, 862 So.2d at 34. When there is no issue related to the cause of death, a personal representative should be allowed to amend an *Engle* Smoker's personal injury complaint in its entirety to state a cause of action for wrongful death.[19]

Certainly, it is true that the elements of a personal injury claim where the death is alleged or proven to have resulted from the complained of tortious conduct are subsumed in the statutory cause of action created by the Wrongful Death Act. Fla. Stat. §§ 768.16–768.26. It is also true that the two claims cannot co-exist unless plead in the alternative, dependent upon the factual resolution of the cause of death. There is nothing to suggest, however, that the institution of this new, separate, statutory cause of action arising from the same facts cannot be implemented by virtue of an amendment to an existing complaint so long as the plaintiff does not seek to proceed on both causes of action where there is no issue related to the cause of death. "Alternative pleading is a time honored practice," and alternative pleadings, one for "pain and suffering, for injuries not resulting in a plaintiff's death," and one "for those elements of damages allowed by the legislature where the injury results] in one's death" constitute a "classic[ ]" example of "inconsistent and alternative pleadings." *Smith v. Lusk*, 356 So.2d 1309, 1311 (Fla.2d Dist.Ct.App.1978).

As recently as April of 2011, the Florida Supreme Court discussed the Wrongful Death Act in detail, explaining that it should be liberally construed. In *Wagner v. Kennedy Law Grp.*, 64 So.3d 1187, 1191 (Fla.2011) (internal quotation marks and citations omitted) (emphasis added), the court stated:

> The Act is designed to substitute the financial resources of the wrongdoer for the resources of the decedent, in an attempt to meet the financial obligations of the decedent ... and to prevent a tortfeasor from evading liability for his or her misconduct when such misconduct results in death.... The Act also eliminates the multiplicity of suits that resulted from each survivor bringing an independent action and avoids survivors racing to get the first judgment.... By statute, the personal representative is the only party with standing to bring a wrongful death action to recover damages for the benefit of the decedent's survivors and the estate.... The survivors may not bring separate legal actions and are required to participate in the single legal action filed by the estate....
>
> **In analyzing the provisions of the Act, this Court has stated that it is guided by the Legislature's general intent that the remedial provisions of the wrongful death statute should be liberally, rather than strictly or narrowly, construed.** While the general rule is that statutes in derogation of the common law are strictly construed, the general rule of strict construction does not, in Florida, apply to a remedial statute in derogation of the common law.

---

**19.** This is especially true in the *Engle* progeny cases because Defendants are well aware that *Engle* Smokers are dying at a fairly constant rate and it is likely that in the coming years, most of the *Engle* progeny cases will be brought by the *Engle* Smokers' personal representatives.

The Florida Supreme Court's explanation supports this Court's determination that the dictates of Section 768.20 do not command that a personal injury lawsuit "self destructs" or "extinguishes" such that the moment the plaintiff dies, the personal injury lawsuit dies as well. That interpretation would revert back to the very common law doctrine the Wrongful Death Act was enacted to replace (i.e., the personal action dies with the person), which prevented a decedent's personal representative from maintaining any action on behalf of the decedent's estate if the cause of action "was personal to the decedent." Wrongful Death Act and Conflict with Survival Statute, 74–100 Op. Fla. Att'y Gen. (Fla. 1974).

If a statute is considered remedial, it should be given a liberal interpretation and should be construed to give the terms used the most extensive meaning to which they are reasonably susceptible. *See* N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2008) § 60:2. Remedial statutes are to be interpreted "in favor of granting access to the remedy provided by the Legislature." *Golf Channel v. Jenkins*, 752 So.2d 561, 565–66 (Fla.2000) (citations omitted). Reading the Wrongful Death Act so restrictively as to require every *Engle* Smoker's personal representative to file a new complaint as opposed to amending an existing complaint to state a cause of action under the Act would constitute a strict construction of a remedial statute as applied here, in part because it would not allow the *Engle* Smokers' personal representatives to benefit from the *Engle* findings.

"It is the public policy of the state [of Florida] to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer." Fla. Stat. § 768.17. It comports with the legislative intent to ensure that the personal representatives would have the same advantages given to *Engle* Smokers who die trying their respective personal injury cases. To hold otherwise would be to effectively punish the *Engle* Smokers' survivors where the Smoker actually dies, rather than continues to suffer personal injuries during his or her lifetime, from the tobacco company Defendants' alleged wrongdoing.

The Court finds that the Wrongful Death Act's loss shifting goal is best served by allowing the *Engle* Smokers' personal representatives to amend the decedents' personal injury complaints to state a cause of action for wrongful death, whether outright or as an alternative to a survival action for a decedent's personal injuries, rather than forcing the personal representatives to file a new lawsuit. This interpretation not only spares the personal representatives the burdens of filing a new lawsuit and paying another filing fee, but it also ensures that they will benefit from any preclusive effects of the *Engle* findings that may have been provided to the *Engle* Smoker had he or she lived through the duration of his or her personal injury action.[20]

---

20. The Court recognizes that there is some case law that disallows amendments that state new causes of action. *See, e.g., United Telephone Co. of Fla. v. Mayo*, 345 So.2d 648 (Fla.1977). However, in cases such as *Mayo*, the court refused to allow such amendments because "[j]udicial and administrative economy will not permit the amendment of a declaration in such a manner as to allege entirely new items on which recovery is claimed after all the evidence has been introduced." The *Mayo* Court explained, "This pragmatic rule is mandated or suit could last in perpetuity." *Id.* at 655 n. 6. The Florida Supreme Court cited *Mansfield v. Brigham*, 91 Fla. 109, 107 So. 336 (1926) as authority for this "rule." In *Mansfield*, the court explained:

It is a general and well-recognized rule that pleadings, by and with the consent of the

## B. Timeliness of the Wrongful Death Action [21]

At first glance, it appears that Mrs. Starling's wrongful death action must be dismissed because it was filed nearly three years after Mr. Starling's death. *See* Fla. Stat. § 95.11(4)(d). After a thorough review of the record, however, the Court deems Mrs. Starling's First Amended Complaint to be timely filed.[22] The record shows that Mrs. Starling did not "sleep on her rights" during the pendency of this action, but rather "diligently pursued her

court, may be amended at any time before the verdict, but this rule should not be applied so as to permit a plaintiff to amend his declaration in such a manner as to allege entirely new items upon which recovery is claimed, at a time when all evidence has been introduced, **except upon condition that there should be an adjournment or continuance of the cause, so as to afford the defendant time to meet such new matters.**
*Id.* at 116–17, 107 So. 336 (emphasis added). In the *Engle* progeny cases, Defendants will not begin discovery until the cases are "activated" by the court. They will have ample time to prepare to defend against the appropriate cause of action. Additionally, Defendants will not be prejudiced by any lack of "notice" of the claims asserted against them if an *Engle* Smoker's personal representative amends the Smoker's personal injury complaint to state a cause of action for wrongful death. *See Davenport v. U.S.,* 217 F.3d 1341, 1345 n. 8 (11th Cir.2000) (discussing amendments in the context of Federal Rule of Civil Procedure 15(c) and explaining that "the critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted") (internal quotation marks and citations omitted). The *Engle* Smokers' personal representatives' claims arise from the same "conduct, transaction, or occurrence" that caused the *Engle* Smokers to file personal injury actions in the first place; the wrongful death action is brought against the same Defendants that were parties to the personal injury action and the damages are largely the same, even though the focus shifts from the decedent's damages to the survivors' damages (e.g., the decedent's damages for pain and suffering are replaced with his or her survivors' damages

claim" to the extent she could while the Court imposed stay was in effect. *Booth v. Carnival Corp.,* 522 F.3d 1148, 1151, 1153 (11th Cir.2008) (internal citations and quotation marks omitted). Moreover, the record supports Mrs. Starling's assumption that the stay prohibited her from filing an amended complaint on the Starling Docket. Accordingly, the Court finds that "equitable tolling" saves Mrs. Starling's claim.[23]

The Eleventh Circuit has explained:

for pain and suffering). *Martin,* 314 So.2d at 768–69; Fla. Stat. § 768.21.

21. In light of the Court's determination that the wrongful death amendments are permissible and timely under the doctrine of "equitable tolling," it is unnecessary to decide the issue of whether a newly filed wrongful death claim, or amended complaint, would "relate back" to some earlier complaint under Federal Rule of Civil Procedure 15(c) and the Court declines to reach that issue.

22. The operative complaint in this action is Mrs. Starling's Second Amended Complaint (Starling Docket, Doc. No. 21). The Court refers to the First Amended Complaint in this Section for the limited purpose of determining whether Mrs. Starling's action is time-barred.

23. The Court is cognizant of *Pierson v. Orlando Regional Healthcare Systems, Inc.,* No. 6:08–cv–466–Orl–28GJK, 2010 WL 1408391 (M.D.Fla. Apr. 6, 2010), which declined to recognize equitable tolling outside the context of administrative proceedings. However, that court found controlling *HCA Health Services of Florida, Inc. v. Hillman,* 906 So.2d 1094 (Fla.2d Dist.Ct.App.2004), which did not involve a court imposed stay. Additionally, the *Pierson* Court explained that it did not find "it appropriate to equitably toll the statutes of limitations" because "the doctrine focuses in part of lack of prejudice to the defendant, and it cannot be said that the [d]efendants have not been prejudiced by [p]laintiff's extensive delay—as to some, a more than eleven-year delay—in filing his damages claims." *Pierson,* 2010 WL 1408391 at *15 n. 20 (internal quotation marks omitted).

Florida law does allow for tolling in certain instances, Fla. Stat. § 95.051, but that list is exhaustive, *id.* § 95.051(2); *Hearndon v. Graham,* 767 So.2d 1179, 1185 (Fla.2000). In Florida, equitable tolling may be available when there is no misconduct on behalf of the defendants and "may delay the running of the limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant." *Major League Baseball v. Morsani,* 790 So.2d 1071, 1077 n. 11 (Fla.2001). It may also be used when "a plaintiff has been misled or lulled into inaction and has in some extraordinary way been prevented from asserting his rights." *Alachua County v. Cheshire,* 603 So.2d 1334, 1337 ( [Fla. 1st Dist. Ct.App.] 1992). Nevertheless, "[equitable] tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir.1993). *Aruanno v. Martin Cnty. Sheriff,* 343 Fed. Appx. 535, 537 n. 2 (11th Cir.2009) (alterations in original). Allowing equitable tolling in this case is appropriate because Mrs. Starling was "lulled into inaction" as of October 30, 2008, when the Court stayed all the *Engle* progeny cases filed on its docket. (2007 Docket, Doc. No. 82.)

When Plaintiffs filed their Proposed 10–case Trial Plan on May 12, 2008, within two months of Mr. Starling's death, Section 6.5 clearly stated that Mr. Starling had died on March 18, 2008. (2007 Docket, Doc. No. 62, p. 9.) On June 19, 2008, a short three months and one day after Mr. Starling's death, Defendants acknowledged that Mrs. Starling, not Mr. Starling, was the plaintiff in the *Starling* action—and further acknowledged that she was pro-

ceeding under the Wrongful Death Act. (*See* 2007 Docket, Doc. Nos. 71, 71–8, p. 4.) Additionally, when the Clerk created the Starling Docket in November of 2009, Mrs. Starling (as personal representative of Mr. Starling's estate) was the appropriate party because Mr. Starling was deceased and her case was already proposed to be "activated" as a wrongful death action. These facts show that Mrs. Starling justifiably believed that the Court imposed stay applied to her wrongful death action and prohibited her from filing her claims until the Court lifted the stay that first went into effect on October 30, 2008.

The Court emphasizes that this tolling period does not prejudice Defendants. The Court already found Defendants would be prejudiced if it dismissed this action without prejudice at this stage of the litigation. (Starling Docket, Doc. No. 61.) Accordingly, the Court denied Mrs. Starling's Motion for Voluntary Dismissal (Starling Docket, Doc. No. 35) because the trial term is set to commence in approximately three to four months, nearly all discovery deadlines have passed, and Mrs. Starling should have moved to dismiss the duplicative state court proceeding as soon as Plaintiffs proposed the *Starling* action to be among the first ten activated cases in this Court. (Starling Docket, Doc. No. 61) Additionally, Defendants did not partake in discovery during the stay, but have presumably conducted discovery to the extent necessary to defend against Mrs. Starling's wrongful death claims since the Court activated her case on December 22, 2010.[24] "[T]he interests of justice are best served here . . . by allowing the parties to

---

**24.** The Court did not rule on the parties' Joint Motion to Stay Proceedings (Starling Docket, Doc. No. 50), filed on August 31, 2011. At best, however, the stay would have been in effect for only one month of the discovery period. The fact and expert discovery deadline was October 1, 2011, with the limited exception of Rule 26(a)(2)(B) defense expert depositions. (Master Docket, Doc. Nos. 137, 252)

resolve [Mrs. Starling's] claims on the merits." *Booth,* 522 F.3d at 1152.

The Court finds the two-year statute of limitations period was equitably tolled between October 30, 2008, when the Court imposed stay took effect, and December 22, 2010, when it lifted the stay on the activated cases. (*See* 2007 Docket, Doc. No. 82; Master Docket, Doc. No. 42.) Exactly seven months and twelve days ran between Mr. Starling's death on March 18, 2008 and October 30, 2008. Add to that the one month and twenty-seven days between December 22, 2010, when the stay was lifted, and February 18, 2011, when Mrs. Starling filed her first wrongful death pleading, the First Amended Complaint,[25] and Mrs. Starling would still have over fifteen months left on the two-year statute of limitations provided by Section 95.11(4)(d).

In light of the foregoing, the Court **DENIES** Defendants' Motion for Judgment on the Pleadings. (Starling Docket, Doc. No. 34.)

## V. CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1) Defendants' Motion for Judgment on the Pleadings and Incorporated Memorandum of Law (Doc. No. 34), filed on July 13, 2011, is **DENIED;** and

2) Joint Motion to Stay Proceedings (Doc. No. 50), filed on August 31, 2011, is **DENIED AS MOOT.**

---

25. The Court recognizes that it did not issue the Order instructing Plaintiffs in the activated cases to file their amended complaints until January 26, 2011. Regardless of whether the statute of limitations clock began running when the stay was lifted or when the January 2011 Order was entered, Mrs. Star-

## ORDER

This cause is before the Court on the following:

1) Defendants' Motion for Reconsideration of the Court's Order Denying Judgment on the Pleadings ("Motion for Reconsideration") (Doc. No. 69), filed on November 16, 2011;[1] and

2) Plaintiff's Opposition to Defendants' Motion for Reconsideration of the Court's Order Denying Judgment on the Pleadings.

## PARTIES' ARGUMENTS

Defendants move this Court to reconsider Section III, Part B of its November 2, 2011 Order, in which it found that equitable tolling applied to the facts of Mrs. Starling's case and deemed her wrongful death action timely filed. (Doc. No. 62, p. 32.) They maintain that the Court should not have considered the "excuses" Mrs. Starling provided in her pleadings to explain why she filed her wrongful death action after the two-year statute of limitations passed because they are not found in the tolling scenarios listed in Florida Statutes Section 95.051. (Doc. No. 69, p. 5.) They argue that a Court imposed stay does not toll a statute of limitations, unless the stay "prevents a party from exercising a legal remedy" under federal law. (*Id.* at p. 3 (emphasis in original) (citing *United States ex rel. Campbell v. Lockheed Martin Corp.,* 282 F.Supp.2d 1324 (M.D.Fla. 2003).) Defendants submit that this Court should have found Mrs. Starling's action was filed outside of the statutorily prescribed time period and summarily dis-

---

ling's wrongful death claims would be deemed timely filed.

1. *See* Order Denying Defendants' Motion for Judgment on the Pleadings and Motion to Stay Proceedings (Doc. No. 62), entered on November 2, 2011.

missed it "[b]ecause controlling Florida law establishes equitable tolling is not available in this case." (*Id.* at p. 7 (citing *Socas v. Nw. Mut. Life Ins. Co.*, No. 07–20336, 829 F.Supp.2d 1262, 2011 WL 5223085 (S.D.Fla. Nov. 2, 2011)[2]; *HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So.2d 1094 (Fla.2d Dist.Ct.App.2005); *Machules v. Dep't of Admin.*, 523 So.2d 1132 (Fla.1988); Fla. Stat. § 95.051).)

Mrs. Starling maintains that the Court's ruling was proper in light of the circumstances presented here. She reiterates that she timely filed her complaint, in accordance with the Court's instructions, when the Court lifted the stay on the nine activated cases. (Doc. No. 76, pp. 3–4.) Mrs. Starling also asserts that the Florida Supreme Court would allow equitable tolling in this instance, arguing that "subsequent to the Florida Legislature's enacting Section 95.051 in 1974, the Florida Supreme Court and courts of appeal have repeatedly recognized the continuing availability of equitable tolling." (*Id.* at pp. 7–8 (citing *Machules*, 523 So.2d at 1133–34; *Williams v. Albertson's, Inc.*, 879 So.2d 657 (Fla. 5th Dist.Ct.App.2004).) She distinguishes the exclusive list of "statutory tolling" mechanisms from "equitable tolling," the latter being outside the purview of the legislature as it is "equitable in nature, not legal." (*Id.* at p. 9.)

## DISCUSSION

Defendants rely heavily on *Hillman* for their contention that the doctrine of equitable tolling is not available in Florida, under any circumstances, outside the context of an administrative law proceeding. *Hillman*, 906 So.2d 1094. This view has been endorsed by at least three federal courts. *See Socas*, 829 F.Supp.2d 1262,

2011 WL 5223085; *Watson v. Paul Revere Life Ins. Co.*, No. 11–21492, 2011 WL 5025120 (S.D.Fla. Oct. 21, 2011); *Pierson v. Orl. Regional Healthcare Sys. Inc.*, No. 6:07–cv–466, 2010 WL 1408391 (M.D.Fla. Apr. 6, 2010). However, none of these cases has offered an in-depth analysis of the rationale that would justify the availability of the doctrine of equitable tolling in the context of an administrative law proceeding, but not in the context of a civil action. Instead, they rely on *Hillman's* analysis.

The Court reviewed *Hillman* prior to entering its Order, but did not consider it binding, not only because of the factual distinctions, but also because "persuasive evidence demonstrates that the highest court [in Florida] would conclude otherwise" under the particular circumstances presented in the *Starling* action. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir.2011). "Where the highest court—in this case, the Florida Supreme Court—has spoken on the topic, [this Court follows] its rule. Where that court has not spoken, however, [this Court] must predict how the highest court would decide this case." *Id.* (citing *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n. 5 (11th Cir.2005)). This Court looks to Florida's intermediate appellate court decisions to provide "data for this prediction." *Id.* (citing *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir.2009) (per curiam) (citations omitted)). "Although a decision by an inferior state court is usually considered 'trustworthy data' of substantive state law, it is not binding on a federal court, particularly where it appears to have misapplied state law." *Caban v. J.P. Morgan Chase & Co.*, 606 F.Supp.2d 1361, 1367 (S.D.Fla.2009).[3]

---

2. This case was decided the day the Court entered its Order.

3. The Court notes that after it issued its November 2, 2011 Order, the Second District

## A. Persuasive Authority Indicates that the Florida Supreme Court Would Find Equitable Tolling Available in this Particular Case

In *Hillman,* the Second District Court of Appeal reviewed the Florida Supreme Court's decisions in *Hearndon v. Graham,* 767 So.2d 1179 (Fla.2000) and *Major League Baseball v. Morsani,* 790 So.2d 1071, 1075 (Fla.2001) and explained:

> The [Florida Supreme Court] held that although section 95.051(1) "delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations,"... it does not prohibit application of the doctrine of equitable estoppel because equitable estoppel is a common law doctrine that "does not 'toll' anything,"... implicit in the court's holding is the conclusion that in order for a

Court of Appeal issued *Skyrme v. R.J. Reynolds Tobacco Co.,* No. 2D11–1986, 2011 WL 5832338 (Fla.2d Ct.App. Nov. 18, 2011). In that decision, the Second District expressed a view consistent with this Court's regarding the Third District's *Capone v. Philip Morris U.S.A. Inc.,* 56 So.3d 34 (Fla.3d Dist.Ct.App. 2010) decision:

> Although we do not have certiorari jurisdiction over the order sought to be reviewed, we take the opportunity to express our concern with the circuit court's ruling. In *Capone,* 56 So.3d at 36, which was relied upon by the circuit court, the Third District held that when a personal injury plaintiff's death is the result of the personal injuries, an amendment to the personal injury complaint should not be permitted and a new, separate lawsuit for wrongful death must be filed.
>
> **We are concerned that requiring such wrongful death claims to be filed as new lawsuits would cause such new lawsuits to be barred as untimely under *Engle* when the original personal injury lawsuits were timely filed under *Engle.*** There is no dispute that the Skyrmes timely filed their initial complaint in December 2007. However, because Mr. Skyrme died in 2009, a separate wrongful death lawsuit could not have been timely filed within the Engle window. In light of the *Engle* consideration in these tobacco cases, which often

doctrine to "toll" the statute of limitations, it must be included in the exclusive list of conditions set forth in section 95.051(1). We find these cases to be persuasive authority in support of our conclusion that the doctrine of equitable tolling is not available to toll the running of the statute of limitations in this civil action.

*Hillman,* 906 So.2d at 1100.

This Court is not persuaded that these cases, or any other Florida Supreme Court authority, indicate that the court would find the doctrine of equitable tolling inapplicable to *any* civil action. Furthermore, a careful reading of *Hillman* suggests that the Second District Court of Appeal did not intend its opinion to stand for the proposition that equitable tolling would be

involve the death of the plaintiff who suffered the personal injuries on which the original personal injury claim was based, we do not see how the result in *Capone* is consistent with the law in Florida addressing the unique relationship between a personal injury claim and a wrongful death claim or how it is supported by the law in Florida regarding the liberal amendment of pleadings. **We believe that if a new, separate wrongful death lawsuit is required to be filed where a personal injury lawsuit had been timely filed under *Engle,* it would be inequitable to bar that new wrongful death lawsuit as being untimely under *Engle.***

*Skyrme,* 2011 WL 5832338, at *3 (emphasis added) (footnotes omitted). The *Skyrme* decision provides further "persuasive evidence" that the Florida Supreme Court would allow Engle Smoker's personal representatives to amend the Smoker's personal injury complaint to allege a wrongful death action. Furthermore, the court's concern that it would be "inequitable to bar that new wrongful death lawsuit as being untimely insofar as receiving the benefits of *Engle,*" indicates that the Florida state courts recognize that the unusual issues presented by the *Engle* progeny cases may sometimes require the court to resort to equitable remedies to ensure justice is served.

unavailable in any case, regardless of the specific facts presented, outside of the administrative law context. *See id.* at 1099 (emphasis added) ("We are not persuaded that our supreme court would allow the doctrine to be applied **in a civil action such as Plaintiffs'.**").

The two Florida Supreme Court cases on which the Second District Court of Appeal based its decision "declined to create additional tolling exceptions to those listed in the statute and instead deferred to the legislative directive that there be no tolling exceptions other than those declared by the legislature." *Id.; see Hearndon,* 767 So.2d 1179; *Morsani,* 790 So.2d 1071. In *Hearndon,* the Florida Supreme Court recognized that "the tolling statute specifically precludes application of any tolling provision not specifically provided therein," and ultimately receded from "past decisions that applied the delayed discovery doctrine to toll the running of a statute of limitation." *Hearndon,* 767 So.2d at 1185. In the later decided *Morsani,* however, the court listed mechanisms "that may operate to deflect the statute of limitations, such as accrual, tolling, **equitable tolling,** and waiver." *Morsani,* 790 So.2d at 1076–77 (emphasis added) (footnotes omitted). Tellingly, the court included an explanatory footnote, describing how each distinctively operated to "toll" the statute of limitations. With regard to equitable tolling, it explained:

> **Equitable tolling, which involves no misconduct on the part of the defendant, may delay the running of the limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant.**

*See, e.g., Machules v. Dept. of Admin.,* 523 So.2d 1132 (Fla.1988) (holding that the doctrine of equitable tolling operates to toll the running of the twenty-day limitations period where the union of a fired worker filed a contractual grievance on his behalf with the employer, and the employer set a hearing date for one day after the expiration of the twenty-day period, rather than filing an appeal directly with the Department of Administration).

*Id.* at 1077 n. 11 (emphasis added).

If the Florida Supreme Court intended to limit the doctrine of equitable tolling to the administrative law context, it could have so indicated. At the very least, it would have based the doctrine's applicability on the context in which the action arises (i.e., the fact that the statute of limitations issue in *Machules* stemmed from deadlines applicable to administrative proceedings), rather than the "the plaintiff's blameless ignorance and lack of prejudice to the defendant." *Id.* Instead, the court made a general statement about the availability of the doctrine, citing the *Machules* case as just one example in which it permitted equitable tolling to save an otherwise untimely action. *Id.* (using the introductory signal *"see, e.g.,"* before its citation to *Machules,* rather than citing directly to *Machules*). Further, the court listed "equitable tolling" separate and apart from "tolling," for which it included an explanatory footnote stating the "statutory bases for tolling the statutes of limitation are set forth in section 95.051, Florida Statutes (1991)."[4] *Id.* at 1077 n. 10.

Furthermore, this Court's close reading of *Machules* leads it to conclude that the

---

4. The distinction between "tolling" and "equitable tolling" was also recognized in the Eleventh Circuit's *Aruanno v. Martin County Sheriff,* 343 Fed.Appx. 535, 537 n. 2 (11th Cir.2009) decision, in which it noted:

Florida law does allow for tolling in certain instances, Fla. Stat. § 95.051, but that list is exhaustive, *id.* § 95.051(2); *Hearndon v. Graham,* 767 So.2d 1179, 1185 (Fla.2000). In Florida, equitable tolling may be available when there is no misconduct on behalf

Florida Supreme Court did not intend to limit the applicability of equitable tolling to administrative proceedings, but rather found the facts in that case warranted use of an **equitable** remedy to toll the statute of limitations, regardless of the legislative constraints outlined in Section 95.051.[5] *Machules*, 523 So.2d 1132. In this vein, the *Machules* Court explained:

> The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period. The tolling doctrine is used in the **interests of justice** to accommodate both a defendant's right not to be called upon to defend a stale claim and a plaintiff's right to assert a meritorious claim when **equitable circumstances have prevented a timely filing.** Equitable tolling is a type of "**equitable modification**," which is generally applied "when the plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely as-

serted his rights mistakenly in the wrong forum.

*Id.* at 1133–34 (emphasis added) (footnote omitted) (internal citation omitted).

The court noted that "[a]lthough there [was] no Florida decision pertaining to the application of the tolling doctrine in administrative proceedings, federal courts have applied it in many different contexts." *Id.*[6] It ultimately concluded that the doctrine applied to the facts of that case "for two reasons: petitioner was mislead or lulled into inaction by his employer, and his appeal to DOA raised. the identical issue raised in the original timely claim filed in the wrong forum." *Id.* Additionally, the court found that the defendant "clearly was not prejudiced by the delay since [it] was obviously on notice that the petitioner intended to appeal its determination of abandonment." *Id.* at 1137. All told, the Florida Supreme Court failed to give any indication that it would find equitable tolling inapplicable outside of the administrative law context.[7]

Finally, the Florida Supreme Court has explained that fixed limitations on actions

---

of the defendants and "may delay the running of the limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant." *Major League Baseball v. Morsani*, 790 So.2d 1071, 1077 n. 11 (Fla.2001). It may also be used when "a plaintiff has been misled or lulled into inaction and has in some extraordinary way been prevented from asserting his rights." *Alachua County v. Cheshire*, 603 So.2d 1334, 1337 (Fla.1992). Nevertheless, "[equitable] tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir.1993). Although this unpublished opinion is not binding, it is nonetheless persuasive authority indicating how the Eleventh Circuit has interpreted "equitable tolling" under Florida law.

5. Although the *Machules* decision does not expressly discuss the tolling provisions set forth in the Florida Statutes, Section 95.051 was in effect at the time the court issued its

opinion, and therefore was equally applicable to that case. (The statute has since been modified slightly, but the subsequent amendments are not material to this analysis.)

6. The Eleventh Circuit and other federal courts continue to recognize equitable tolling in various circumstances. *See e.g., Booth v. Carnival Corp.*, 522 F.3d 1148 (11th Cir.2008) (applying federal law and finding equitable tolling appropriate).

7. The Court also notes the Florida Supreme Court's suggestion in *Machules* that "[h]ad an action been [timely] filed in county court, we would have permitted the transfer of the action to circuit court. Had an action been [timely] filed in the wrong circuit, we would have permitted the transfer to the appropriate circuit." *Machules* 523 So.2d at 1136. The supreme court then emphasized, "The application of this principle is even more compelling when the issue is simply which administrative agency or procedure will be utilized to

"are predicated on public policy and are a product of modern legislative, rather than judicial, processes. A prime purpose underlying statutes of limitation is to protect defendants from unfair surprise and stale claims:"

> As a statute of [limitations], they afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses. Indeed, in such circumstances, the quest for truth might elude even the wisest court.

*Morsani*, 790 So.2d at 1074–75 (footnotes containing citations omitted) (quoting *Nardone v. Reynolds*, 333 So.2d 25, 36 (Fla. 1976) (quoting *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745, 752 (R.I.1968))). Public policy and legislative intent would not be frustrated in actions like Starling, where these concerns are absent.

## B. Extraordinary Circumstances Presented in this Case[8]

 Although this Court is respectful of the need to give heed to the well-rea-soned conclusions of the Florida intermediate appellate courts, it is compelled to reaffirm its decision that the *Starling* wrongful death action should be deemed timely filed. The facts of the instant case demonstrate a procedural perfect storm justifying the application of "an extraordinary remedy which should be extended only sparingly." *Justice,* 6 F.3d at 1479 (discussing equitable tolling). As described in the November 2, 2011 Order, the Court finds that the Defendants in this case are not forced to defend "claims which, because of their antiquity," would place them at "a grave disadvantage." *See Morsani,* 790 So.2d at 1074–75 (footnotes omitted) (citations omitted). Further, Mrs. Starling has not "willfully or carelessly" slept on her rights, and the claim here is anything but "unfresh." *See id.*

The Court does, however, take this opportunity to clarify that the equitable tolling portion of its November 2, 2011 Order is specific to the particularly unique factual and procedural history of the *Starling* action, to wit, a court imposed stay of the proceedings[9] at the time the statute of limitations would have otherwise run, acknowledgment and disclosure by Mrs. Starling that her claims in this action were for wrongful death well within the limitations period, and acknowledgment by Defendants, as exhibited in record evidence,

---

review the pertinent finding." *Id.* Although this language is dicta, it is nevertheless an indication that the Florida Supreme Court would consider equitable tolling available where the circumstances of a civil action so warranted.

8. The Court refers the parties to its Order Denying Defendants' Motion for Judgment on the Pleadings and Joint Motion to Stay Proceedings for a comprehensive statement of the facts and procedural history of this case. (Doc. No. 62, pp. 12–26.)

9. On October 14, 2008, the parties jointly moved for a stay of all *Engle* progeny case pending final resolution of interlocutory appeals (Doc. No. 81) and the Court granted the stay on October 30, 2008. (Doc. No. 82.) On November 27, 2009, the Court entered an Order in which it stated, "The stay in these cases remains in effect until further order of this Court. Upon the lifting of the stay, the Court will enter orders requiring the filing of an amended complaint and answer in each case." *In re: Engle Cases,* No. 3:09–cv–10000 (M.D.Fla. Nov. 27, 2009).

that they were defending against a wrongful death action well within the limitations period. (*See Amaros*, No. 3:07–cv–760 (M.D.Fla. Aug. 16, 2007), Doc. No. 62; Doc. No. 71–8, p. 4 (describing Annette Starling as the plaintiff in the *Starling* action, and "wrongful death" as the type of action).)

To the extent that other *Engle* progeny plaintiffs do not share the procedural and factual background presented here, the Court would be chary of extending equitable tolling beyond those facts. Regardless of whether a pending *Engle* progeny case is stayed or active, it is the parties' responsibility to preserve all causes of action and to protect their respective rights, which may vary from case to case.[10]

### CONCLUSION

Given the extraordinary circumstances presented in this particular *Engle* progeny case, and because the Court finds "persuasive indication that the state's highest court would decide the issue otherwise," this Court reaffirms its decision that this action warranted the "extraordinary remedy" of equitable tolling. *See Justice*, 6 F.3d at 1480. Accordingly, it is hereby ordered that the Defendants' Motion for Reconsideration of the Court's Order Denying Judgment on the Pleadings (Doc. No. 69) is **DENIED.**

**DONE AND ORDERED.**

---

**10.** The Court makes no attempt to address the myriad factual scenarios which may be present in the thousands of remaining Engle progeny claims related to the timeliness of actions. Suffice to say Plaintiffs sleep on their rights at their peril. Plaintiffs' counsel are obliged to be aware of the date their client's death. The number of pending claims does not mitigate this obligation.